# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00035-SCT

*DR. JAMES RUSSELL, MR. WALTER TYNES, MR. GARY TANNER, MR. M.K. TURK, DR. RANDOLPH ROSS, DR. DAVID MADDEN, MRS. MARIANNA MADDEN, TRUSTEE FOR KATHRYN MADDEN AND MR. ROBERT K. DANIELS*

*v.*

*SOUTHERN NATIONAL FOODS, INC., CHARLES N. McCAFFREY, SR., BLENDCO, INC. AND CHARLES N. McCAFFREY, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/1998 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | S. ROBERT HAMMOND, JR. |
| | ROBIN E. BLACKLEDGE BLAIR |
| ATTORNEYS FOR APPELLEES: | LAWRENCE CARY GUNN, JR. |
| | MICHAEL CLAYTON BAREFIELD |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 01/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/17/2000 |

## BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.

## SMITH, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Appellants Dr. James Russell, Mr.Walter Tynes, Mr. Gary Tanner, Mr. M.K.Turk, Dr. Randolph Ross, Dr. David Madden, Mrs. Marianna Madden, Mrs. Marianna Madden Trustee for Kathryn Madden, and Mr. Robert K. Daniels. Appellants appeal from a summary judgment order issued on December 4, 1998. Appellants filed their action in the Chancery Court of Forrest County on February 16,1990. Appellants contend the lower court erred in denying their Motion for Partial Summary Judgment and granting the appellees' Motion for full Summary Judgment.

¶2. The appellants' suit is for the recovery of money invested in Southern National Foods, Inc. (SNF), a

Mississippi corporation. It is alleged the Mississippi Securities Act, Miss. Code Ann. §§ 75-71-101 et seq. (1991 & Supp. 1999), was violated because the Southern National Foods stock was not registered pursuant to the Mississippi Securities Act. A second count of the complaint is a charge of fraud and misrepresentation in regard to a second stock purchase.

¶3. Appellees, Southern National Foods, Inc., and Charles N. McCaffrey, Sr., responded to appellants' motion and filed a Cross-Motion for full Summary Judgment on June 26, 1998. Appellees, Blendco, Inc. and Charles N. McCaffrey, Jr., joined the Cross-Motion on September 8, 1998.

¶4. Oral argument was held after which the court granted appellees' Motion for Summary Judgment as to both Counts and denied appellants' motion. The lower court held the issues presented did not require the application of Miss. Code Ann. §§ 75-71-401 or 75-71-717 nor was there any material issue of fact to be resolved in this matter pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure.

## STATEMENT OF THE FACTS

¶5. Blendco, Inc. is a Mississippi corporation formed in 1983. It is headquartered in Hattiesburg and enjoys a fine reputation in the Hattiesburg business community. Blendco is 100% owned by Charles N. McCaffrey, Jr., known as "Charley" to distinguish him from his father, "Red" McCaffrey ("Charles, Sr.") Blendco, Inc. is not a McCaffrey family owned enterprise.

¶6. Blendco's business involves manufacturing of Ezy-Time products, biscuit mix, cornbread mix, and a variety of other dry food preparations. Some time in 1987 or 1988, Charles, Sr. got the idea for starting a frozen biscuit company, SNF. This business could be a potential source of revenue for Blendco since dry biscuit mix is a specialty of the company.

¶7. Charley went along with the idea of SNF and assisted with the normal start-up of the company out of family loyalty and partly out of a desire to see a new business succeed that would be a potential customer of Blendco. Stanley Carpenter ("Carpenter"), Blendco's corporate accountant, stated in his affidavit that Charles, Sr. approached him with a draft document titled "Proposal" for a Frozen Foods Company. The proposal was later produced by Carpenter for distribution. He was directed to present the proposal to some of his clients who might be interested in making an investment in the proposed business. Accordingly, Carpenter presented the prospectus to appellants Ross, Turk, and Madden. Russell, an employee of Blendco, was also instructed to distribute the prospectus for the same purpose as Carpenter. Russell presented the prospectus to Dr. Russell ( his father) and Tynes. Tanner and Daniels were approached by Charley. During this time, Blendco signed the lease for the building where the frozen foods plant was to be housed. The proposal in part stated the following:

## PURPOSE

1. *Form a corporation* to manufacture frozen food, primarily flour base and cornmeal base products, producing both pre-cooked and uncooked products for institutional and retail markets.

2. Forty(40) percent of the company will be available in twenty (20) units of two (2) percent each for $10,000. The remaining sixty (60) percent will be issued to the owners of the patents and the trademark in exchange for a license to use the patents and trademark.

3. The $200,000 will finance Phase I. *Phase II will require $650,000 within one year*. The Board

of Directors and Stockholders will have to decide how to finance the expansion.

4. Blendco, Inc. would be responsible for securing a building, locating all equipment and supplies required to operate.

¶8. A meeting was held at Blendco's offices in February, 1988, where the appellants met to hear a presentation about the proposed new frozen biscuit company. At that time, the potential investors were told how the frozen biscuit business would be formed. Charley made introductions, pledged his support, and explained how the equipment worked. He further emphasized Blendco's equipment would be available for the production of all biscuit mix, biscuit production, packaging and storage until SNF could afford to invest in its own equipment. Charles, Sr. pledged the use of his patented biscuit mold and cutter, as well as the trade name "Ezy-time". All of the potential investors were given a tour of Blendco.

¶9. As a result of the presentations, tour, and prospectus, each appellant invested capital and acquired stock in SNF, as follows:

| INVESTORS | FUNDS | PAYMENT OF FUNDS | SHARES |
|---|---|---|---|
| R.and B. Daniels | $10,000 | 2-25-1998 | 100 |
| J. and A. Russell | $30,000 | 2-25-1998 | 300 |
| Tynes | $20,000 | 3-3-1998 | 200 |
| Tanner | $10,000 | 3-31-1998 | 100 |
| Turk | $10,000 | 2-27-1988 | 100 |
| Ross | $10,000 | 3-31-1998 | 100 |
| D. and M. Madden | $10,000 | 2-29-1988 | 100 |
| M. Madden for K. Madden | $10,000 | 2-29-1988 | 100 |

Charley received payments from the investors and granted them their respective percentages of ownership in the proposed frozen foods plant. Charley told the investors their money would be deposited into a trust account until the frozen foods plant was formed; thereafter, the funds would be transferred into the corporate account for the frozen foods plant.

¶10. Appellants emphasized that Charley was the president and secretary of Southern National Foods and that he met with an attorney in Hattiesburg who referred him to an expert in the securities field that he never contacted. Subsequently, all of the shareholders of SNF signed the Articles of Incorporation as incorporators. Appellants allege this was done as a mere formality. The Articles were filed on April 14, 1988. It is undisputed that the securities were never filed with the Secretary of State's Office. Stock certificates were issued in September, 1988.

¶11. After Blendco withdrew its support of SNF, Charles, Sr. consented to the stockholders' taking control of the operation. The stockholders took control of the corporation in February, 1989 and made a second investment of cash. The court, having heard and considered the matter, found there was no sale of existing stock within the meaning of the Mississippi Blue Sky Laws. The issuance of stock for the formation of SNF was only among the incorporators, and, according to *Guynn v. Shulters*, 223 Miss. 232, 78 So. 2d 114,119 (1955), the subscribers had no right of action for failure of the corporation, or one who induces them to purchase stock, to comply with the Blue Sky Laws of Mississippi. The lower court also stated

there was no material issue of fact to be resolved in this matter and because no genuine issue of material fact exist pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure, appellees' Motion for Summary Judgment was granted.

## STATEMENT OF THE ISSUES

**I. WHETHER THE LOWER COURT ERRED IN APPLYING *GUYNN v. SHULTERS*, 223 Miss. 232, 78 SO.2D 114 (1955) TO A SECURITIES MATTER INSTEAD OF THE MISSISSIPPI SECURITIES ACT.**

**II. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FINDING NO MATERIAL ISSUE OF GENUINE FACT REGARDING APPELLANTS' STATUS AS INCORPORATORS.**

**III. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FINDING NO ISSUE OF MATERIAL FACT WAS CREATED REGARDING THE FRAUD AND MISREPRESENTATION CLAIMS.**

## DISCUSSION OF LAW

**I. WHETHER THE LOWER COURT ERRED IN APPLYING *GUYNN v. SHULTERS* TO A SECURITIES MATTER INSTEAD OF THE MISSISSIPPI SECURITIES ACT.**

¶12. The question to be answered is whether the "Mississippi Blue Sky Laws" applies to organizers of a corporation who, prior to the incorporation of the business, agree to subscribe to stock and later organize and bring the corporation into being. Few cases have arisen in which it has been determined whether certain security transactions are exempt under statutory provisions of the Mississippi Securities Act. This question is largely addressed by statutes of the various states.

¶13. The appellants assert that the trial court erred in its application of the law when it relied on *Guynn v. Shulters,* 223 Miss. 232*,* 78 So.2d 114 (1955). *Guynn* held that preincorporation stock certificates did not have to be registered if they were sold to the incorporators of a "to be formed" corporation. Appellants argue that the Mississippi Securities Act of 1981 should have been applied and that such law imposes liability on one who sells preincorporation stock that is not registered with the Secretary of State or otherwise exempted from registration under Article 3 of the statute.

¶14. The appellants proceed on the theory that *Guynn* predates the current Blue Sky statutes, and thus the case has no application. Appellants' main contention is that the Mississippi Code of 1942 has been repealed or superceded by the Mississippi Securities Act of 1981, and thus *Guynn* contradicts the current securities regulations. Appellants continue this argument by inferring the legislative intent is to require the registration of preincorporation stock. Due to the fact the definition of "stock" in the Mississippi Code of 1942 did not include "preorganization subscriptions" nor a means for its registration, the appellants contend the wrong law was applied.

¶15. However, the appellees note that the Court addressed this concern in *Guynn* by stating that other jurisdictions have carved an exception to the registration requirements by quoting the Kentucky Supreme Court decision in *Gannon v. Grayson Water Co.,* as follows: "Though the act provides that "security shall include 'preorganizaton subscriptions'; it is at once apparent that, when subscriptions are taken prior to the

filing of articles of incorporation, no method is provided for the registration of such subscriptions." 78 So. 2d at 119 (quoting *Gannon v. Grayson Water Co.*, 71 S.W. 2d 433 Ky. 1934) Additionally, the court quoted 14 Fletcher, Cyclopedia Corporations, §6747, at 192, "Subscriptions to stock are to be distinguished from sales of stock by a corporation." 78 So. 2d at 119. The court went on to say, "But in other states the statute does not apply to a subscription to stock made before the corporation is created, or at least not to subscriptions by one interested in the promotion of the corporation." 78 So.2d at 119.

¶16. The Court in *Guynn* , as well as the chancellor in the case at hand, homed in on the primary issue which was not whether the code definition was inclusive but whether the Mississippi Securities Act afforded incorporators of preincorpation stocks protection.

¶17. *Guynn* held preorganizaton stock subscribers, who later procured a charter, organized the corporation, and attended stockholders' meetings, had no right of action against the person who induced them to purchase stock where there was a failure of the corporation to comply with Blue Sky laws. *Id.*

¶18. The appellees contend *Guynn* is the controlling case in this matter. They argue the appellants are incorporators and as such have no standing to sue for failure to register the stock under the Securities Act. Blue Sky laws are to protect the weak, uninformed investor.

¶19. In determining this issue today, the same inquiry should be made, the intention and the purpose of the legislature in enacting the Blue Sky laws. State legislative bodies have sought to protect the potential investor from becoming the prey of promoters of worthless securities. John C. Williams, Annotation, "*What Constitutes "Public" or "Private" Offering Within Meaning of State Securities Regulation*, 84 A.L.R.3d 1009, 1012 (1978). Thus, the laws seeking to afford protection against these schemes were termed "Blue Sky Law"*. Id.* These promoters were said to have designed speculative schemes which had no more basis than so many feet of blue sky. *Id.* An important area regulated by state Blue Sky Laws is the registration of securities. *Id.* By requiring that securities offered to the general public for sale be registered, states have sought to insure that the securities so offered are not part of a fraudulent enterprise that may lead the investor into a financial loss. *Id.* It is the general public which benefits from protection afforded by these laws; it is the public offering of these securities that is the subject of regulation. *Id.* Therefore, Blue Sky Laws are not applicable to offerings to "insiders", those persons who can fend for themselves and who are informed and sophisticated members of the general public. *Id.*

¶20. The *Guynn* Court applied these concepts to the following facts. Owners of a small chicken business met and discussed the desirability of purchasing stock and organizing their business with some potential investors. 78 So.2d at 117. Inspections were made by the investors and stock purchased. *Id.* A meeting was held where the investors obligated themselves to subscribe to a number of shares to be created with a capitol stock of $25,000. *Id.* It was decided to incorporate and to proceed to procure the charter. *Id.*

¶21. At the first meeting of the stockholders, a committee was appointed to draft bylaws and provisions made for four additional directors to be elected. *Id.* at 118. Subscribers paid for their stock and certificates were issued. *Id.* The business began losing money when a disease infected the chickens killing thousands. *Id.* The business continued to lose money until the plaintiffs filed an action. *Id.* at 119. The Court ruled the law was not intended to apply to such a situation. *Id.* at 120. This was not a case of engaging in the sale of stock of an existing corporation. *Id.* All agreed to take stock for the purpose of forming the corporation. *Id.*

¶22. The Court elaborated by saying:

> Men in all parts of this State get together, in varying numbers, and discuss the prospects of successful operation of a corporation they propose to form and the advantage to them of investing in its stock if and when it is created. . . . they agree to subscribe for stock in the future corporation. Later the charter is obtained and the corporation created and organized by these very subscribers and the stock is issued. Either from mismanagement, or lack of demand for its output, or misfortune. . ., the corporate business is not a success.

*Id*. The Court then asked," can one subscriber recover from a fellow subscriber the price he pays for his stock simply because the prospective corporation and the enthusiastic subscriber have not complied with the requirements of the Blue Sky Laws"? *Id*. The court answered no. *Id*.

¶23. The facts presented in the record of this case at hand are very much analogous to *Guynn*. The appellants " associated themselves together" to form a corporation. They were involved in the initial start-up of the business and when the business started experiencing problems, the appellants took control. Additional funds were invested to insure the business's success. Nevertheless, the business failed, and the appellants now seek to rescind their investment. The appellants contend the signing of the articles of incorporation was a mere formality. The appellees state convincingly, not a single appellant presented evidence to show that he was misled, or deceived. Even withstanding this argument, this one factor would not exclude the appellants from being associated as an "insider" to the corporation.

¶24. In *Durham v. Firestone Tire & Rubber Co.,* 55 P.2d 648,650-51,(Ariz.1936), it was held all persons who before the formal organization of the corporation had aided and assisted in or advised and encouraged its organization with the definite intention and expectation that they should become stockholders are not subjected to the Arizona Blue Sky Law. In *Ayers v. Wolfinbarger,* 491 F.2d 8 (5th Cir. 1974), the court stated the acquisition of the original issue of stock was nothing more than organizational stock. The sale of stock to the promoters was a private offering and, therefore, exempt from the registration requirements of the Federal Securities Act. *Id*. at 16.

¶25. In *S.E.C. v. Ralston Purina Co.,* 346 U.S. 119, 125, 73 S. Ct. 981, 97 L.Ed. 1494, 1498-99 (1953), the Court held the applicability of the registration requirement in the federal Securities Act should turn on whether the particular class of persons affected need the protection of the Act. As this Court held in *Guynn* and the chancellor also ruled here, the appellants did not need the protection of the Mississippi Securities Act nor was it the statute's intent to afford this group protection. *Guynn,* at 120.

¶26. In summary, considering the clear purpose of the Act is to protect the general public, the trial court found the appellants were "insiders". Appellants were appraised of all material data, and they had access to information. There was a limited number of subscribers, having a privileged relationship with the corporation. Their present knowledge, involvement in forming the corporation, and ability to acquire information would not afford them protection under the Act. *Guynn* is not overruled.

¶27. Contrary to the appellants' argument, this decision does not allow sellers to avoid compliance with the Mississippi Securities Act. This ruling recognizes the purpose and intent of the legislature which is to protect the public and not insiders. Thus, the Mississippi Securities Act did not apply to this issue before this Court.

## II. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN

**FINDING NO MATERIAL ISSUE OF GENUINE FACT REGARDING APPELLANTS' STATUS AS INCORPORATORS.**

¶28. The standard of review for summary judgment as set forth in *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996):

> The standard for reviewing the granting or denying of summary judgment is the same standard as is employed by the trial court under rule 56(c). This Court conducts de novo review of an order granting or denying summary judgment and looks at all the evidentiary matters before its admissions in pleading, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to a judgment as a matter of law, summary judgment should be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Id*. (quoting *Mantachie Natural Gas v. Mississippi Valley Gas Co.,* 594 So. 2d 1170, 1172 (Miss. 1992).

¶29. The appellants argue the lower court erred as a matter of law in granting appellees' Cross-Motion for full Summary Judgment. In granting full summary judgment, the lower court found that the appellants were incorporators of Southern National Foods Inc., relying on *Guynn v. Shulters*, 223 Miss. 232, 78 So. 2d 114 (1955).

¶30. The appellants further claim that *Guynn* is inapposite to the facts at bar. An incorporator is a person who joins others to form a corporation and the successors of those who actually sign the papers of the incorporation. The appellants claim the plaintiffs in *Guynn* fit the definition because plaintiffs did not sign the articles of incorporation, they formed the corporation and in their roles as directors and officers, succeeded those who signed. Appellants continue by saying they are not like the plaintiffs in *Guynn* because they are outside investors who had no part in deciding to form a corporation and the fact that they signed their names on the Articles of Incorporation was a mere formality.

¶31. On the other hand, the appellees allege that the appellants' argument is without merit. They question why the appellants, if they felt they were deceived, did not state this fact in an affidavit. Quoting Rule 56(e) of the Civil Rules of Procedure,("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein"), the appellees state this assertion is unsupported by any evidence in the record.

¶32. None of the appellants presented an affidavit to the court contending that they were duped or misled into signing their names as incorporators. The only evidence introduced on this issue was evidence to the contrary - an affidavit of James Russell (son of one of the appellants). James Russell makes an assertion that the shareholders were required to sign the articles of incorporation. Appellees assert the affidavit of James Russell is totally incompetent and is inadmissible evidence.

¶33. Relying on *Guynn* and on the undisputed facts in the record, the lower court found the appellants

were not only incorporators but insiders as well. The record reflects that the appellants aided, advised, and encouraged the business organizations with the intention and expectation that they would become stockholders as in *Guynn*. The appellants are right in that the issue in *Guynn* did not necessarily rest on the fact that the plaintiffs did not sign the incorporation papers, but the decision turned on their involvement in the development of the business.

¶34. It is logical to think at some time the appellees thought they should incorporate and expand their business. This possibility was discussed with the appellants at the February 8, 1988, meeting. During the meeting, appellants also made inspections of the facilities. Prior to this meeting, some of the potential investors had received a proposal outlining the developmental stage for a future corporation. Several of the appellants thought it was a good investment and subscribed to stock on February 9, 1998. Additional appellants also subscribed to stock with all funds being deposited in a trust account until transferred into an open account for SNF. The Articles of Incorporation were signed and filed on April 14, 1988.

¶35. From the proposal, the appellants were aware: (a) the *purpose was to form a corporation* to manufacture frozen food; (b) forty (40) percent of the company will be available in twenty (20) units of (2) percent each for $10,000; (C) two hundred thousand dollars will finance Phase I; (d) Phase II will require $650,000 within one year, the administrative staff of Blendco can be utilized to manage the corporation ; (e) In Phase II, a marketing organization will be required; (f) proposal for a board of directors of five (5) be elected; (g) management personnel will be selected by Blendco, Inc. and approved by the Board; (h) the dividend policy, bylaw, is set by the board of directors; (i) Blendco, Inc. personnel will be responsible for the following: (1) secure a building (2) locate all equipment and supplies required to operate (3) install equipment and trial run (4) furnish mixes for manufacture of frozen products and (5) supply the following from start up until the new corporation becomes self-sufficient: (a) administrative services (b) accounting services (c) credit collection (d) supervisor (e) quality control and (f)new product development.

¶36. In February 1989, the appellants took control of the business after Blendco withdrew its support. However, the appellants argue they did not play an integral role in the formation and development of the business. The lower court was correct in finding otherwise. The appellants were brought in on the ground floor, as were the plaintiffs in *Guynn*. The concept for SNF was just that a concept. There was no such business prior to its incorporation by insiders. Without the appellants, SNF, Inc. may not have proceeded and reached the incorporation stage. The appellants' actions were steps in the creation of a corporation. The proposal showed an estimation of what was needed in order to get the business off the ground and how the structure of the business could commence. The appellants had ample opportunity at the meeting and thereafter to interject any suggestions and or concerns. They had control to assist or reject the formation of the business. They chose to encourage the formation of the business by executing the Articles of Incorporation and in subscribing to stock . Thus, giving their approval to the proposal and lending their name to the articles of incorporation.

¶37. The plaintiffs in *Guynn* did no more nor no less than the appellants here. The plaintiffs in *Guynn* also discussed the desirability of purchasing stock, organizing the corporation, made inspection of the chicken farm, obligated themselves to subscribe to stock and decided to incorporate. *Guynn* at 117-18. All negotiations between appellants and appellees with reference to agreements to subscribe for stock, were prior to formation of the corporation and had for their purpose the creation of a corporation.

¶38. In summary, this case is one of law, with no conflict of material fact for a jury to decide. At best, the

facts show appellants were individual preorganization subscribers for the purpose of creating and financing a corporation to be created at some time in the future. They were insiders who were involved in the development of the organization prior to its incorporation. The focal point of review is on material facts.

¶39. The chancellor was correct in granting summary judgment. The court correctly found the appellants were insiders after reviewing the record. They took the risk to incorporate and invest in a future business, with the expectation of reaping profits.

### III. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FINDING NO ISSUE OF MATERIAL FACT WAS CREATED REGARDING THE FRAUD AND MISREPRESENTATION CLAIMS.

¶40. The appellants maintain that the chancellor erred in granting the appellees' Motion for Summary Judgment. As the appellees noted in their briefs, a non-moving party who has the burden of proof at trial on any particular element of a claim must, in response to a Motion for Summary Judgment, establish by affidavit or as otherwise provided in Rule 56, the existence of facts to support each such element of each such claim. The appellants would have the burden of proving, as to Count II of the Complaint, the elements of Miss. Code Ann. § 75-71-717(a) (1991), which provides, in pertinent part:

> (a) Any person who... offers or sells a security by the use of any written or oral communication which contains any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading(the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent (8%) per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at eight percent (8%) per year from the date of disposition.

¶41. The appellants filed forth no counter affidavits to challenge the affidavit of Charles, Sr., regarding fraud and misrepresentation of the second investment. The appellants assert they were unaware that the appellees sought full summary judgement. Additionally, the appellants state the appellees did not inform them or the trial court of the law on which they proposed to rely to obtain judgment on the claims of fraud and misrepresentation. Nor did they specifically request the trial court to grant judgment on the fraud and misrepresentation claims. Because all the motion language involved the securities registration issue, appellants inferred that the appellees simply omitted the term"partial" from their motion. Consequently, appellants never raised the second sale or the fraud laws in response to their motions. Thus, the appellants assert, the chancellor's ruling, granting the motion for summary judgment, was based in part on facts and law not in the record. Appellees' Cross-Motion for Summary Judgment and the chancellor's order granting the motion are silent on the law and facts relevant to resolve the second count of the Complaint.

¶42. The appellees show they cross-moved for full or, alternatively, partial summary judgment, although appellants appear to be complaining they are now unaware of this fact. The Cross-Motion concludes, as follows:

**WHEREFORE, PREMISES CONSIDERED,** Southern National Foods, Inc. and Charles N. McCaffrey, Sr. pray for *judgment in their favor,* as against the plaintiffs, on the basis that there remain no genuine issue of material fact and said defendants are entitled to judgment as a matter of law. Said defendants further pray, *in the alternative,* that this Honorable Court render *partial* summary judgment *on all issues* presented in Plaintiffs' Motion for Summary Judgment.

(emphasis supplied).

¶43. The appellees question why the appellants submitted affidavits covering some of the issues pertaining to Count II if they were unaware that they sought full summary judgment. The affidavits of the appellants do not mention Charles, Sr. ever made any written or oral communications which contain any untrue statement of a material fact or omitted to state a material fact necessary in order to make any statements he made not misleading.

¶44. The only admissible evidence in the record regarding the issue of fraud and misrepresentation pertains to the following affidavit from Charles, Sr.:

> My only participation at the February 1988 meeting of prospective investors for a frozen food company was providing information on the technical aspect of producing frozen biscuits. The only representation or pledge that I made at said meeting was that I would grant the use of my patents for biscuit molds and cutters and Edy time trademark to be used by a corporation to ultimately be formed by interested incorporators. ...I executed a licensing agreement in favor of Southern National Foods, Inc. for the use of my patent and trademark, as I had promised. After Blendco withdrew its support of Southern National Foods, Inc., I took the initiative to try to save the company and consented to the stockholders taking control of the operations of Southern National Foods, Inc. The stockholders took control of the corporation in February of 1989. I invested my savings and incurred substantial debt on behalf of Southern National Foods.

¶45. It is not mentioned in the affidavits of the appellants that Charles, Sr., ever made any written or oral communications which contain any untrue statement of a material fact. The appellants' claim they had been told that Blendco had been started with no long term debt. It is also alleged they were not told about Charles, Sr.'s bankruptcy or about the option and promissory note allegedly held by his wife. Nor were they told that Charley disputed the enforceability of the option and promissory note. The appellants assert all of these facts were material and should have been disclosed and the failure to do so made other representations incomplete, inaccurate, and misleading.

¶46. There is no proof in the record of any bankruptcy of Charles, Sr. The appellants' have not made proof of such allegations being material nor have they shown that any such bankruptcy proximately caused their losses. Not one appellant stated under oath that knowledge of any purported bankruptcy of Charles, Sr. would have caused them to change their course of action. There is no proof in the record that Charles, Sr. knew of Charley's dispute as to the enforceability of the option or that the dispute, when it arose, would have any effect whatsoever on the operation of SNF, Inc. In addition, there is no proof in the record that would indicate that the stock option nor the dispute of its enforceability proximately caused the appellants' losses. The appellants may not rest upon the mere allegations of their pleadings.

¶47. The proposal showed that within one year after incorporation, an influx of an additional $650,000

would be necessary for Phase II. The record further shows the appellants were in complete control prior to the expiration of one year after incorporation. The appellants made the second investment with their eyes wide open, knowing the reasons for the additional investment. Even if an investment decision is induced by fraud which is relied on by a plaintiff, recovery is not permitted if the proximate cause of the monetary loss is other than the fraud alleged. *McGonigle v. Combs*, 968 F.2d 810, 819-22 (9th Cir. 1992). Additionally, an affirmative intent to deceive must be shown. 69A Am. Jur. 2d *Securities Regulation-Federal* § 1561, 624-25 (1993). At the very least, intentional or deceptive conduct must be shown. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 196 S. Ct. 1375, 47 L. Ed. 2d 668, 680 (1976). The record contains no proof of intent. The appellants may not rest upon the mere allegations of their pleadings.

## CONCLUSION

¶48. In summary, when a motion for summary judgment is made and supported as provided in M.R.C.P. 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. After reviewing the record submitted by the parties, the lower court properly granted summary judgment in favor of the appellees. Therefore, the judgment of the Forrest County Chancery Court is affirmed.

¶49. **AFFIRMED.**

**BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY. PRATHER, C.J., AND PITTMAN, P.J., NOT PARTICIPATING.**