# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01827-SCT

*QUALCOMM INCORPORATED*

*v.*

*AMERICAN WIRELESS LICENSE GROUP, LLC,*
*AND HOMER A. WHITTINGTON, JR., AS*
*TRUSTEE FOR THE HOMER A. WHITTINGTON,*
*JR. REVOCABLE TRUST, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2005 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GLENN GATES TAYLOR |
| | B. WADE SMITH, IV |
| | CHRISTY MICHELLE SPARKS |
| ATTORNEYS FOR APPELLEES: | EUGENE COURSEY TULLOS |
| | PETER J. TEPLEY |
| | CHRISTOPHER A. SHAPLEY |
| | JOSEPH ANTHONY SCLAFANI |
| | MEREDITH JOWERS LEES |
| | PAGE ANDERSON POERSCHKE |
| | J. MICHAEL REDIKER |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2005-IA-01829-SCT

*QUALCOMM INCORPORATED*

*v.*

*HOMER A. WHITTINGTON, JR., ET AL.*

DATE OF JUDGMENT: 09/06/2005
TRIAL JUDGE: TOMIE T. GREEN
COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: GLENN GATES TAYLOR
B. WADE SMITH, IV
CHRISTY MICHELLE SPARKS
ATTORNEYS FOR APPELLEES: EUGENE COURSEY TULLOS
PETER J. TEPLEY
CHRISTOPHER A. SHAPLEY
JOSEPH ANTHONY SCLAFANI
MEREDITH JOWERS LEES
PAGE ANDERSON POERSCHKE
J. MICHAEL REDIKER
NATURE OF THE CASE: CIVIL - TORTS - OTHER THAN PERSONAL
INJURY & PROPERTY DAMAGE
DISPOSITION: AFFIRMED AND REMANDED - 11/15/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

CONSOLIDATED WITH

NO. 2005-IA-01841-SCT

*HARVEY P. WHITE, SCOT B. JARVIS, SUSAN G.*
*SWENSON, THOMAS J. BERNARD, JEFFREY P.*
*WILLIAMS, ANTHONY R. CHASE, MICHAEL B.*
*TARGOFF, JILL E. BARAD, ROBERT C. DYNES,*
*JAMES E. HOFFMANN, STEWART DOUGLAS*
*HUTCHESON, DANIEL O. PEGG, LEONARD C.*
*STEPHENS AND QUALCOMM INCORPORATED*

*v.*

*AMERICAN WIRELESS LICENSE GROUP, LLC,*
*AND HOMER A. WHITTINGTON, JR., AS*
*TRUSTEE FOR THE HOMER A. WHITTINGTON,*
*JR. REVOCABLE TRUST, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2005 |
| TRIAL JUDGE: | TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID W. CLARK |
| | MARY CLAY W. MORGAN |
| | GLENN GATES TAYLOR |
| | B. WADE SMITH, IV |
| | CHRISTY MICHELLE SPARKS |
| ATTORNEYS FOR APPELLEES: | EUGENE COURSEY TULLOS |
| | PETER J. TEPLEY |
| | CHRISTOPHER A. SHAPLEY |
| | J. MICHAEL REDIKER |
| | PAGE ANDERSON POERSCHKE |
| | MEREDITH JOWERS LEES |
| | JOSEPH ANTHONY SCLAFANI |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CONSOLIDATED WITH**

**NO. 2005-IA-01883-SCT**

*HARVEY P. WHITE, SCOT B. JARVIS, SUSAN G. SWENSON, THOMAS J. BERNARD, JEFFREY P. WILLIAMS, ANTHONY R. CHASE, MICHAEL B. TARGOFF, JILL E. BARAD, ROBERT C. DYNES, JAMES E. HOFFMANN, STEWART DOUGLAS HUTCHESON, DANIEL O. PEGG, LEONARD C. STEPHENS AND QUALCOMM INCORPORATED*

*v.*

*HOMER A. WHITTINGTON, JR., ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2005 |
| TRIAL JUDGE: | TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |

ATTORNEYS FOR APPELLANTS: DAVID W. CLARK
 MARY CLAY W. MORGAN
 GLENN GATES TAYLOR
 B. WADE SMITH, IV
 CHRISTY MICHELLE SPARKS

ATTORNEYS FOR APPELLEES: EUGENE COURSEY TULLOS
 PETER J. TEPLEY
 CHRISTOPHER A. SHAPLEY
 J. MICHAEL REDIKER
 PAGE ANDERSON POERSCHKE
 MEREDITH JOWERS LEES
 JOSEPH ANTHONY SCALFANI

NATURE OF THE CASE: CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE

DISPOSITION: AFFIRMED AND REMANDED - 11/15/2007

MOTION FOR REHEARING FILED:

MANDATE ISSUED:


## CONSOLIDATED WITH

## NO. 2005-CA-01894-SCT


*HARVEY P. WHITE, SCOT B. JARVIS, SUSAN G. SWENSON, THOMAS J. BERNARD, JEFFREY P. WILLIAMS, ANTHONY R. CHASE, MICHAEL B. TARGOFF, JILL E. BARAD, ROBERT C. DYNES, JAMES E. HOFFMANN, STEWART DOUGLAS HUTCHESON, DANIEL O. PEGG, LEONARD C. STEPHENS AND QUALCOMM INCORPORATED*

*v.*

*AMERICAN WIRELESS LICENSE GROUP, LLC*

DATE OF JUDGMENT: 09/06/2005
TRIAL JUDGE: TOMIE T. GREEN
COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: DAVID W. CLARK
 MARY CLAY W. MORGAN
 GLENN GATES TAYLOR
 B. WADE SMITH, IV
 CHRISTY MICHELLE SPARKS

| ATTORNEYS FOR APPELLEE: | EUGENE COURSEY TULLOS |
| --- | --- |
| | PETER J. TEPLEY |
| | CHRISTOPHER A. SHAPLEY |
| | J. MICHAEL REDIKER |
| | PAGE ANDERSON POERSCHKE |
| | MEREDITH JOWERS LEES |
| | JOSEPH ANTHONY SCLAFANI |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/15/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2005-CA-01895-SCT

*HARVEY P. WHITE, SCOT B. JARVIS, SUSAN G. SWENSON, THOMAS J. BERNARD, JEFFREY P. WILLIAMS, ANTHONY R. CHASE, MICHAEL B. TARGOFF, JILL E. BARAD, ROBERT C. DYNES, JAMES E. HOFFMANN, STEWART DOUGLAS HUTCHESON, DANIEL O. PEGG AND LEONARD C. STEPHENS*

*v.*

*HOMER A. WHITTINGTON, JR., AS TRUSTEE FOR THE HOMER A. WHITTINGTON, JR., REVOCABLE TRUST; ET AL.*

| DATE OF JUDGMENT: | 09/06/2005 |
| --- | --- |
| TRIAL JUDGE: | TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GLENN GATES TAYLOR |
| | B. WADE SMITH |
| | CHRISTY MICHELLE SPARKS |

ATTORNEYS FOR APPELLEES:          EUGENE COURSEY TULLOS
                                  PETER J. TEPLEY
                                  CHRISTOPHER A. SHAPLEY
                                  J. MICHAEL REDIKER
                                  PAGE ANDERSON POERSCHKE
                                  MEREDITH JOWERS LEES
                                  JOSEPH ANTHONY SCLAFANI
NATURE OF THE CASE:               CIVIL - TORTS - OTHER THAN PERSONAL
                                  INJURY & PROPERTY DAMAGE
DISPOSITION:                      AFFIRMED AND REMANDED - 11/15/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This case involves civil liability for alleged violations of federal and state securities law and for fraud.  The appeal is from the circuit court's denial of the defendants' motions to dismiss, or, in the alternative, to compel arbitration.  Finding that the trial court did not err in denying the motions, we affirm the judgment and remand for further proceedings.

**FACTS**

¶2.    The individual plaintiffs are members of American Wireless License Group (AWG), a Mississippi limited liability company.[1]  The individual defendants ("Leap defendants") are current and former officers and directors of Leap Wireless International, Inc., or its successors in interest.  Until September 1998, Leap was a subsidiary of the corporate defendant, Qualcomm Incorporated.  The plaintiffs allege that Qualcomm still exercised control over Leap during the time period in question.

_____

[1]On February 19, 2007, AWG agreed to submit its claims to arbitration.  Accordingly, the appeals involving AWG are hereby dismissed as moot.

¶3. On June 8, 2001, Leap transferred approximately 1.9 million shares of unregistered Leap stock to AWG in exchange for wireless telephone licenses. The agreement provided that the shares were to be transferred in a private offering not subject to the registration requirements of the Securities Act of 1933. The agreement also contained a provision that any dispute arising from or related to the agreement would be submitted to binding arbitration at the election of either Leap or AWG.

¶4. Pursuant to the agreement, Leap registered AWG's stock with the Securities and Exchange Commission on June 15, 2001, and AWG began selling its stock on the public market in the fall of 2001. According to the complaint, AWG had disposed of all its Leap stock by December 2001, and it was during this time that the plaintiffs purchased Leap stock on the public market.

¶5. At the time of the June registration, the Leap stock was valued at $30.42 per share. The complaint states that during October through December 2001, when the plaintiffs were buying Leap stock, its value had dropped to between $14.00 and $23.00 per share. On August 14, 2002, Leap announced that it had lost a purchase price adjustment dispute with MCG PCS, Inc., which sold wireless licenses to Leap in 2000. As a result of the MCG award, Leap was forced to file for bankruptcy protection. At the time the lawsuit was filed, the stock was valued below $.30 a share.

¶6. The plaintiffs filed suit against the Leap defendants and Qualcomm, alleging that Leap failed to disclose material facts about the MCG dispute in its communications with the plaintiffs and in various press releases and SEC filings, including the June 2001 registration statement. The plaintiffs claimed liability under Sections 11 and 15 of the Securities Act of

7

1933, Sections 717(a)(2) and 719 of the Mississippi Securities Act, and fraudulent misrepresentation.

**PROCEDURAL HISTORY**

¶7.  Both the Leap defendants and Qualcomm filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6).  Yet, Qualcomm's motion to dismiss was treated as a Rule 56 motion for summary judgment because its submissions went outside the pleadings.  In response to Qualcomm's motion, the plaintiffs filed a "Rule 56(f) Affidavit." Rule 56(f) of the Mississippi Rules of Civil Procedure provides, "[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may [1] refuse the application for judgment or [2] may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or [3] may make such order as is just."  The trial court entered an order denying Qualcomm's motion on the grounds that "a dispute of material fact" existed, but the order made no mention of the plaintiffs' Rule 56(f) motion.

¶8.  The trial court's failure to address the Rule 56(f) issue has created confusion among the parties.  The plaintiffs assert that because the trial court did not provide them with ten days' notice that Qualcomm's Rule 12(b)(6) motion would be considered a motion for summary judgment, this Court must affirm the trial court pursuant to ***Jones v. Regency Toyota, Inc.***, 798 So. 2d 474, 476 (Miss. 2001).  Qualcomm argues that the denial of summary judgment was proper because the trial court implicitly denied relief under Rule 56(f) and the plaintiffs have failed to comply with Rule 56(e).  In the alternative, Qualcomm

8

argues that this Court should disregard the additional submissions attached to its motion, and treat it as a motion to dismiss under Rule 12(b)(6).

¶9.     Because of the scant record, and because the trial judge did not rule on the Rule 56(f) issue, the Court is not in a position to consider a motion for summary judgment. Discovery has not yet begun; indeed, the defendants have not even filed an answer to the complaint. Accordingly, Qualcomm's claims shall be treated in the context of a motion to dismiss under Rule 12(b)(6).

## ISSUES

¶10.     On appeal, Qualcomm and the Leap defendants argue: (1) the trial court erred in denying the motions to compel arbitration; (2) the federal securities claims fail because the plaintiffs do not have standing to sue and because the registration statement explicitly warned of the alleged omissions; (3) both the state securities and fraud claims should fail as a matter of law because there is no causal link between the alleged omissions and the plaintiffs' losses, there was adequate disclosure of the risks, and the plaintiffs failed to allege that the defendants acted with the requisite intent; and (4) the Leap defendants and Qualcomm cannot be liable for Leap's actions because they did not exercise the requisite control over the corporation.

## STANDARD OF REVIEW

¶11.     Regarding the arbitration issue, it is well established that "[t]he grant or denial of a motion to compel arbitration is reviewed de novo." *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002) (citing *Webb v. Investacorp, Inc.*, 89 F. 3d 252, 256 (5th Cir. 1996)).

9

¶12. When reviewing a trial court's grant or denial of a motion to dismiss pursuant to Rule 12(b)(6), this Court also employs de novo review. *HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1101 (Miss. 2003) (citing *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990)). A Rule 12(b)(6) motion should not be granted unless it appears "to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support the claim." M.R.C.P. 12 cmt.

## DISCUSSION

### I. Arbitration.

¶13. The threshold question in this case is whether the circuit court erred in denying arbitration, as a finding in favor of arbitration precludes a discussion of the merits. "The court's sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the court may not delve further into the dispute." *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96, 108 (Miss. 1998). *See also AT&T Techs., Inc. v. Commun. Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim.").

¶14. The parties in this case do not dispute that the Federal Arbitration Act governs our analysis. This position is consistent with our holding in *Smith Barney v. Henry*, 775 So. 2d 722, 725 (Miss. 2001) ("[T]he securities industry, on a national level, meets the minimum threshold of affecting or bearing upon interstate commerce, and thus initiates the Federal Arbitration Act.").

10

¶15. Under the FAA, this Court must conduct a two-step inquiry: first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *East Ford*, 826 So. 2d at 713 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). This Court has embraced a "liberal federal policy favoring arbitration agreements" and will liberally construe agreements with a presumption in favor of arbitration. *Terminex Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss. 2004). However, because arbitration provisions are contractual in nature, the general rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006) (internal citations and quotations omitted). Thus, while "we will read the reach of an arbitration agreement between *parties* broadly, [that] is a different matter from the question of who may invoke its protections." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (emphasis supplied). This is so because "[a]n agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems – an openness this country has been committed to from its inception." *Id.*

¶16. In this case, we are faced with the unique situation of non-signatories attempting to enforce an arbitration provision against other non-signatories. In addition, the plain language of the arbitration provision only extends to Leap and AWG as corporate entities: "any dispute, claim or controversy arising under this Agreement or in any way related to this

11

Agreement, or its interpretation, enforceability or inapplicability may be submitted to binding arbitration at the election of either *Buyer* [AWG] or *Seller* [Leap]." (emphasis supplied).

¶17. There are exceptions to the general rule that non-signatories may not be bound, which our Court has repeatedly recognized. For instance, a non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement. *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005) (internal citations omitted). Additionally, a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary or if the doctrine of equitable estoppel applies. *Adams*, 943 So. 2d at 708. *See also Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) ("Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.") (internal citations omitted).

¶18. The issue in this case is a rather simple question of contract interpretation. By the plain terms of the contract, it is evident that the parties simply did not agree to extend to non-signatories the benefit of the arbitration clause, for they easily could have stated so. The contract clearly reads that disputes may be submitted to arbitration at the election of either Buyer or Seller. Because the defendants are neither the Buyer nor Seller, they are not entitled to enforce arbitration. As we have stated before, this Court must "accept the plain meaning of a contract as the intent of the parties if no ambiguity exists." *B.C. Rogers*, 911 So. 2d at 487 (citing *I.P. Timberlands*, 726 So. 2d at 108). Moreover, "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract,

12

simply because the policy favoring arbitration is implicated." ***B.C. Rogers***, 911 So. 2d at 487

(quoting ***EEOC v. Waffle House, Inc.,*** 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755

(2002)).

¶19.    Accordingly, because the language of the contract is unquestionable as to who may

seek arbitration, the trial court did not err in refusing to compel arbitration.

**II. Section 11 Claims.**

¶20.    Section 11 of the Securities Act of 1933, now codified at 15 U.S.C. § 77k, provides

a private damages action to any person who buys securities that were issued pursuant to a

false or misleading registration statement.  Section 11 provides in pertinent part:

> In case any part of the registration statement, when such part became effective,
> contained an untrue statement of a material fact or omitted to state a material
> fact required to be stated therein or necessary to make the statements therein
> not misleading, any person acquiring such security (unless it is proved that at
> the time of such acquisition he knew of such untruth or omission) may, either
> at law or in equity, in any court of competent jurisdiction, sue –
>
> (1) every person who signed the registration statement;
> (2) every person who was a director of (or person performing similar
> functions) or partner in, the issuer at the time of the filing of the part of the
> registration statement with respect to which his liability is asserted . . .

15 U.S.C. 77k(a).  "The section was designed to assure compliance with the disclosure

provisions of the Act by imposing a stringent standard of liability on the parties who play a

direct role in a registered offering." ***Herman & MacLean v. Huddleston***, 459 U.S. 375, 381-

82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).  "If a plaintiff purchased a security issued

pursuant to a registration statement, he need only show a material misstatement or omission

to establish his prima facie case." ***Id.***  at 382.  Therefore, to state a valid Section 11 claim,

13

a plaintiff must allege (1) that he purchased a security issued pursuant to a registration statement that (2) contained a material misstatement or omission.

**A. Standing**.

¶21.    The defendants argue that the plaintiffs lack standing to bring their Section 11 claims because they cannot prove that the Leap stock they purchased on the public market was issued pursuant to Leap's June 15, 2001 Registration Statement that contained the alleged material misstatements and omissions.  The plaintiffs claim that they can "trace" the Leap stock they purchased back to the June 15, 2001 Registration Statement.

¶22.    Section 11 provides that "any person acquiring such security" may bring an action for losses caused by a misstatement or an omission in a registration statement.  15 U.S.C. § 77k(a).  "[T]he natural reading of 'any person acquiring such security' is simply that the buyer must have purchased a security issued under the registration statement at issue, rather than some other registration statement." ***Rozenweig v. Azurix Corp.***, 332 F.3d 854, 873 (5th Cir. 2003) (quoting ***Hertzberg v. Dignity Partners, Inc.***, 191 F.3d 1076, 1080 (9th Cir. 1999)).  Thus, only plaintiffs who have actually purchased "shares issued and sold pursuant to the challenged registration statement" have standing to bring a Section 11 claim. ***7547 Corp. v. Parker & Parsley Dev. Partners, L.P.***, 38 F.3d 211, 223 (5th Cir. 1994).

¶23.    To have standing to assert a Section 11 claim, a plaintiff need not have purchased the stock in the initial public offering covered by the registration statement. ***In re JDN Realty Corp. Sec. Litig.***, 182 F. Supp. 2d 1230, 1244 (N.D. Ga. 2002).  Rather, the plaintiff must merely "be able to trace the purchase of his securities to the registration statement that allegedly violated section 11." ***Id.*** (citations omitted).  The federal courts of appeal that have

14

addressed the issue have uniformly held that so-called "aftermarket purchasers" have standing to sue under Section 11. *See Rozenweig*, 332 F.3d at 872; *Demaria v. Anderson*, 318 F.3d 170, 175-78 (2d Cir. 2003); *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 974-78 (8th Cir. 2002); *Joseph v. Wiles*, 223 F.3d 1155, 1158-61 (10th Cir. 2000); *Hertzberg*, 191 F.3d at 1079-82.

¶24.   The plaintiffs purchased Leap shares in the open market.  However, the plaintiffs allege in their complaint that the Leap shares they purchased can be traced back to the June 15, 2001 Registration Statement.  They allege that "the plan was always for the members of [AWG] to become Leap shareholders."  According to their complaint, "Leap was unwilling to directly issue Leap Stock" to the members of AWG because many of them were "unaccredited investors."  In order to transfer the Leap stock to the AWG's shareholders, Leap and AWG devised the following three-step mechanism: "(a) Leap would issue Leap Stock to the single entity, [AWG], treating it as the accredited investor; (b) . . . Leap would register the stock for resale in [AWG's] name; (c) the [AWG] members would then buy the Leap Stock back in essentially simultaneous purchases."

¶25.   The plaintiffs allege that the scheme was in fact carried out and that they "wound up owning the Leap Stock that had been owned by [AWG]."  They claim that AWG and its members used UBS Paine Webber to handle the stock transaction.  As stated in their complaint, "UBS Paine Webber handled both sides, selling substantially all of the Leap shares issued in [AWG's] name originally, and buying back the Leap Stock, selling the shares to the [AWG] members (including the Plaintiffs), in simultaneous or virtually simultaneous transactions."

15

¶26. The plaintiffs have adequately alleged in their complaint that the Leap Stock they purchased is traceable to the June 15, 2001 Registration Statement filed by Leap. "Plaintiffs have not been required to explain how their shares can be traced; general allegations that plaintiff purchased 'pursuant to' or traceable to false registration statement have been held sufficient to state a claim." *In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285-86 (3d Cir. 1992)); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 854-55 (E.D.N.Y. 1990); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 592 (S.D.N.Y. 1993); *Neuberger v. Shapiro*, 1998 U.S. Dist. LEXIS 10944 at *7 (E.D. Pa. July 17, 1998)). Accordingly, the plaintiffs have sufficiently pleaded standing to assert their Section 11 claims.

**B. Materiality of Alleged Misstatements and Omissions**.

¶27. The plaintiffs alleged in their complaint that the June 15, 2001 Registration Statement filed by Leap was false and misleading because it failed to disclose the risks associated with its purchase price adjustment dispute with MCG PCS, Inc. In particular, the plaintiffs alleged that the Registration Statement did not adequately disclose (1) that Leap's dispute with MCG "created the basis for a massive dilution or 'watering' of the Leap [stock] . . . first acquired by [AWG] in June 2001and then acquired by Plaintiffs in the fall of 2001;" (2) "the amount of shares or dollars that Leap would have to deliver . . . to MCG" if Leap was not successful in arbitration; and (3) that the dispute with MCG "created a significant risk that Leap's covenants in its lending and financing arrangements would be violated." The Leap defendants assert that they disclosed all of these risks in the Registration Statement.

16

¶28.     An omission is considered material if there is "a substantial likelihood that [its disclosure] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re Donald Trump Sec. Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).  *See also* *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004).  "[I]f the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality [it is] appropriate for . . . [a] court to rule that the allegations are inactionable as a matter of law." *Trump*, 7 F.3d at 369 n.13 (internal quotations and citations omitted).

¶29.     With regard to Leap's alleged failure to disclose the risk of dilution and the amount of money or number of shares that Leap would have to deliver to MCG if it was unsuccessful in the adjustment dispute, it is a fact issue whether such information was not adequately disclosed.  Leap suggests that the June 15, 2001 Registration Statement warning, "YOUR OWNERSHIP INTEREST IN LEAP WILL BE DILUTED UPON ISSUANCE OF SHARES WE HAVE RESERVED FOR FUTURE ISSUANCE," suffices.  Whether such boilerplate language constitutes an adequate disclosure of the risk of dilution posed by the adjustment dispute is a mixed question of law and fact.  Generally such "vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the [registration statement]." *Trump*, 7 F.3d at 371-72.  The Registration Statement also stated that "up to 785,598 shares . . . [were] reserved for issuance in connection with our pending

17

acquisition of wireless licenses in Buffalo and Syracuse, New York." MCG's identity as the company from whom the wireless licenses were being purchased was not disclosed; nor was it disclosed that Leap might have to issue 21 million shares to MCG as a result of the dispute, as it eventually did.

¶30.　The only information in the Statement regarding the dispute is the following:

> In the pending acquisition of wireless licenses in Buffalo and Syracuse, New York . . . the seller has asserted that based on the results of the recent FCC auction of wireless licenses, it is entitled to a purchase price adjustment that would result in the purchase price being effectively doubled. Under the terms of the agreement, if we are obligated to pay a purchase price adjustment, we [are] entitled to pay such additional amounts in cash or Leap common stock at our discretion.

Although Leap disclosed that a purchase price adjustment might force it to pay double the purchase price, the purchase price was not disclosed. For those reasons, the plaintiffs have sufficiently alleged a material omission in the Registration Statement.

¶31.　Regarding Leap's failure to adequately disclose that a potential issuance of shares in connection with the dispute with MCG could violate Leap's lending covenants, the plaintiffs have alleged a material omission. The June 15, 2001 Registration Statement warned that "HIGH LEVELS OF DEBT COULD ADVERSELY AFFECT OUR BUSINESS AND FINANCIAL CONDITION." Whether such boilerplate language constitutes an adequate warning is a mixed question of law and fact. Generally, such statements which are not "substantive [or] tailored to future projections, opinions or estimates" are inadequate.

¶32.　We are not the triers of fact; we only determine if there are sufficient facts alleged to survive a motion to dismiss. Because the plaintiffs have alleged sufficient facts to survive a motion to dismiss, the motion was properly denied by the trial court.

18

**III. Section 15 Claims.**

¶33.    The plaintiffs also assert claims under Section 15 of the 1933 Securities Act against all of the Leap defendants and Qualcomm.[2]  The plaintiffs seek to hold them liable for the allegedly misleading June 15, 2001 Registration Statement on the ground that the defendants "controlled" Leap at the time the Statement was filed.

¶34.    Section 15 provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12 . . . shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.  "The term 'control'...means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405(f).

¶35.    The plaintiffs allege that the Leap defendants and Qualcomm all had the "power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same."  The plaintiffs' complaint alleges in detail how each defendant had control over Leap.  The complaint states that "by virtue of their high-level positions, their ownership and contractual rights, their access to information, their

---

[2]All of the Leap defendants besides Hoffman, Hutcheson, Pegg and Stephens signed the June 15, 2001 Registration Statement and are subject to liability if the plaintiffs prevail. 15 U.S.C. § 77k(a)(1).  The four defendants who did not sign the Statement can only be held liable under Section 15 as controlling persons.

19

participation in and/or awareness of Leap's operations and/or intimate knowledge of the false and misleading reports filed by Leap with the SEC," the defendants were able to influence and control the decision-making of Leap, its disclosure processes, and the Registration Statement. Additionally, the plaintiffs allege that Qualcomm's control over Leap stemmed from "its past and continuing business and financial ties" with Leap, "its very strong contractual rights and 'holds' over Leap," its dominant shareholdings in Leap, and its access to inside information.

¶36. Taking all of the allegations in the complaint as true, the plaintiffs have stated a valid Section 15 claim against all of the defendants sufficient to survive a motion to dismiss. Accordingly, the circuit court correctly denied the motion to dismiss the Section 15 claims.

**IV. State-Law Claims**.

¶37. The plaintiffs also assert claims under the Mississippi Securities Act (MSA) against the Leap defendants for making material misrepresentations and omissions in connection with the sale of Leap stock. The plaintiffs claim that Leap violated Mississippi Code Section 75-71-717(a)(2) (Rev. 2000), which provides in pertinent part:

> Any person who . . . offers or sells a security by the use of any written or oral communication which contains any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission) . . . is liable to the person buying the security from him . . .

¶38. The plaintiffs further allege that these misrepresentations and omissions support a claim for fraud. "In order to establish fraud, the following elements must be proven: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or

20

ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Holland v. Mayfield*, 826 So. 2d 664, 674 (Miss. 1999) (citations omitted).

¶39. The defendants argue that both the state securities and common law fraud claims should fail as a matter of law because: (1) there is no causal link between the alleged omissions and the plaintiffs' losses; (2) there was adequate disclosure of the risks; and (3) the plaintiffs failed to allege that the defendants acted with the requisite intent.

¶40. The plaintiffs allege in their complaint that Leap made multiple written and oral communications which contained material misstatements and omissions of material facts regarding Leap's business operations, including but not limited to the financial implications of the purchase price adjustment dispute with MCG, and that they relied on these communications in deciding to purchase Leap stock. The plaintiffs claim that Leap not only failed to adequately disclose the dispute with MCG in the June 15, 2001 Registration Statement, but also in its quarterly and annual reports filed with the SEC during 2001 and 2002. They also allege that Leap agents and representatives made misstatements and omissions of material fact to the plaintiffs during personal visits and in telephone conversations, faxes, emails, and mailed correspondence.

¶41. The plaintiffs also claim that Leap's misstatements and omissions of material fact were the proximate cause of the damages they incurred in connection with their purchases of Leap stock. *See Russell v. S. Nat'l Foods, Inc.*, 754 So. 2d 1246, 1256 (Miss. 2000)

21

("[R]ecovery is not permitted if the proximate cause of the monetary loss is other than the fraud alleged.").

¶42. Contrary to the defendants' assertions, the complaint adequately pleaded a cause of action under both Section 75-71-717(a)(2) and fraud. First, causation is question of fact to be determined by the jury. *Donald v. AMOCO Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999). Likewise, the question of whether the risks were adequately disclosed is a question left to the trier of fact. Therefore, it would be improper to grant a Rule 12(b)(6) motion on these issues.

¶43. Regarding the requisite intent, the plaintiffs allege that the defendants knew that these material omissions were being made: "Each defendant knew and intended that the material omitted facts were not being disclosed to Plaintiffs, and acted with the requisite degree of knowledge or scienter, intending thereby to induce Plaintiffs to pay money for the Leap Stock under circumstances of not knowing the material omitted facts." Taking all of the allegations in their complaint as true, the plaintiffs have stated a valid claim under Section 75-71-717(a)(2) and for fraud. The issue of causation and whether the disclosures were sufficient are questions of fact for the jury, and the plaintiffs adequately pleaded that the defendants acted with the intent required to support a cause of action for fraud. Therefore, the trial court did not err in refusing to grant the motion to dismiss on the Section 75-71-717(a)(2) and fraud claims.

¶44. Finally, the plaintiffs seek to hold the Leap defendants secondarily liable for the misstatements and omissions of material fact made by Leap under Mississippi Code Annotated Section 75-71-719 (Rev. 2000), which provides in relevant part:

22

> Every person who directly or indirectly controls a seller liable under Section 75-71-717, every partner, officer or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller . . .

The plaintiffs allege in their complaint that the Leap defendants were in control of Leap at the time the misstatements and omissions of material fact were made. As with Section 15 liability, taking those allegations to be true, the plaintiffs have adequately stated a claim for liability under Section 75-71-719 against the Leap defendants. Therefore, the circuit court properly denied the Leap defendants' motion to dismiss the plaintiffs' claims for relief under the MSA.

### Conclusion

¶45.   Because the plain terms of the contract limit persons who may enforce arbitration, the trial court did not err in denying the motion to compel arbitration. Additionally, the plaintiffs have adequately pleaded their federal and state claims in order to survive a Rule 12(b)(6) motion to dismiss. For the foregoing reasons, the circuit court's denial of the motions to dismiss, or to compel arbitration, is affirmed, and this case is remanded to the circuit court for proceedings consistent with this opinion.

¶46.   **AFFIRMED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES AND DICKINSON, JJ., NOT PARTICIPATING.**

23