# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-IA-00594-SCT

*EMILE DALON, IN HIS INDIVIDUAL CAPACITY
AS WRONGFUL DEATH BENEFICIARY OF
CAROL ANN DALON, DECEASED AND THE
ESTATE OF CAROL ANN DALON*

*v.*

*MS HUD OCEAN SPRINGS LLC d/b/a OCEAN
SPRINGS HEALTH AND REHABILITATION
CENTER, INCORRECTLY NAMED AS GULF
COAST HEALTH CARE OF DELAWARE, LLC
a/k/a GULF COAST HEALTH CARE LLC, AND
LINDA COSIO*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2018 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | DOUGLAS LAMONT TYNES, JR. |
| | COURTNEY PARKER WILSON |
| | LYNDA CLOWER CARTER |
| | ASHLEY W. GUNN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DOUGLAS LAMONT TYNES, JR. |
| | COURTNEY PARKER WILSON |
| ATTORNEYS FOR APPELLEES: | LYNDA CLOWER CARTER |
| | ASHLEY W. GUNN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 09/12/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. This is a nursing-home negligence case concerning the death of Carol Dalon at Ocean

Springs Health and Rehabilitation Center (OSHRC). Carol's son Emile Dalon, who is the

administrator of her estate and a wrongful-death beneficiary, filed suit in the Jackson County Circuit Court, alleging that OSHRC and its employees negligently caused Carol's death. The circuit court granted the defendants' motion to compel arbitration, and Emile appeals.

**FACTS**

¶2.     Carol was transferred from another nursing home to OSHRC on June 2, 2011, after sustaining injuries.  At the time she was admitted, Carol had a history of dementia, depression, anxiety, insomnia, and delirium, along with other conditions affecting her communication skills, daily tasks, and decisionmaking capacity.

¶3.     OSHRC's admission agreement, which included an arbitration agreement, was signed by Emile.  Carol had previously granted Emile a General Durable Power of Attorney (General POA) and a Power of Attorney for Health Care (Health Care POA), both of which were in effect when Emile signed the admission agreement on Carol's behalf.

¶4.     It was alleged that in late May or early June of 2015, Carol fell and suffered a broken leg.  She died about a month after her injury was discovered.  Emile and Carol's estate then brought suit, alleging negligence and wrongful death.  The defendants moved to dismiss or, in the alternative, to stay proceedings and compel arbitration.  The circuit court denied the motion to dismiss but granted the motion to stay proceedings and compel arbitration.  Emile and the estate now appeal, arguing Emile had no authority to submit his mother's claims to arbitration.

**DISCUSSION**

¶5.     The sole issue before this Court is whether the circuit court erred by granting the

2

motion to compel arbitration. Emile argues three points: (1) he lacked authority to execute the arbitration agreement, (2) arbitration is unconscionable, and (3) the chosen forum is not available.

### 1. Arbitration Generally

¶6. Mississippi will "liberally construe agreements with a presumption in favor of arbitration." *Qualcomm Inc. v. Am. Wireless License Grp., LLC*, 980 So. 2d 261, 269 (Miss. 2007) (citing *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss. 2004)). "Under the Federal Arbitration Act, the Court employs a two-part test: (1) 'whether the parties intended to arbitrate the dispute,' and (2) 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Harrison Cty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 949 (Miss. 2013) (quoting *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011)). For the reasons explained below, this Court finds that both parties intended to arbitrate and that no external legal constraints foreclosed arbitration.

### 2. Emile's Authority

¶7. Arbitration agreements are contracts and are governed as such. *Scruggs*, 60 So. 3d at 767. "The elements of a contract are '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010) (quoting *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 37 (Miss. 2007)). Emile

3

argues that the legal-capacity element is missing here because he lacked the authority to execute the agreement on Carol's behalf. We find this argument meritless because, at the time the arbitration agreement was signed, Emile had both a General POA and a Healthcare POA over Carol.

¶8.     Additionally, Emile argues that he had neither express nor apparent authority to sign the arbitration agreement on Carol's behalf. But we find that the General POA and Healthcare POA gave Emile the express authority to sign the arbitration agreement.

### A.     General POA

¶9.     Emile argues that the General POA did not grant him authority to execute the arbitration agreement because it did not expressly convey Carol's right to waive a trial by jury to him. We disagree. The General POA stated, "my attorney-in-fact shall have the power and authority to handle all of my affairs and transactions in the State of Mississippi . . . ." It also vested Emile with the authority "to execute, acknowledge and deliver any and all contracts . . . and any other instrument or agreement of any kind or nature whatsoever . . . ."

¶10.    Additionally, the General POA stated,

> I HEREBY GIVE AND GRANT unto my said attorney full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my said attorney, or her substitute or substitutes, have done, shall do, or cause to be done lawfully by virtue of these presents.

A plain reading of the General POA shows Emile possessed the authority to sign the

4

arbitration agreement on Carol's behalf.

###### B. Healthcare POA

¶11.    Carol had also executed a Healthcare POA that appoints Emile as Carol's agent to make "all healthcare decisions" on her behalf.  Emile argues that while the Healthcare POA vested him with the authority to make healthcare decisions for Carol, it did not permit him to waive Carol's constitutional right to a jury trial or her right to full legal redress.  This argument lacks merit.  The Mississippi Code states,

> (h) "Health-care decision" means a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including:
>
> > (i) Selection and discharge of health-care providers and institutions;
> >
> > (ii) Approval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not to resuscitate; and
> >
> > (iii) Directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.

Miss. Code Ann. § 41-41-203(h) (Rev. 2018).

¶12.    This Court has found numerous times that signing an arbitration agreement is a healthcare decision.  *Miss. Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 218 (Miss. 2008); *Covenant Health Rehab of Picayune v. Brown*, 949 So. 2d 732 (Miss. 2007), *overruled on other grounds by Covenant Health Rehab of Picayune v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009); *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507 (Miss. 2005), *overruled on other grounds by Moulds*, 14 So. 3d 695.  Emile's decision to sign the arbitration agreement is considered a healthcare decision that the

5

Healthcare POA authorized him to make on Carol's behalf.

### 3. Unconscionability

¶13.    Emile also argues the arbitration agreement is both procedurally and substantively unconscionable. If "an arbitration agreement is found to be unconscionable pursuant to general state law principles, then it may be invalidated without offending the Federal Arbitration Act." *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 711 (Miss. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). The existence of either procedural or substantive unconscionability is sufficient to render the agreement invalid.

#### A. *Procedural Unconscionability*

¶14.    The indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998) (quoting *Bank of Ind., Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 109-10 (S.D. Miss. 1979)).

¶15.    Here, the arbitration agreement was conspicuous. It was written as a separate agreement with its own signature lines and was titled, in capital letters, AGREEMENT TO ARBITRATION OF ALL CLAIMS (MISSISSIPPI). The agreement was highly visible and

6

was not buried within a larger document. The arbitration agreement was also fewer than two pages long and explained its terms without complex legal language.

¶16. Emile presented no evidence he lacked the opportunity to study the arbitration agreement and to inquire about its terms. Emile does not argue he was time pressured when signing the agreement. Additionally, the arbitration agreement explained that Emile had the right to seek legal counsel concerning the arbitration agreement. If Emile had concerns or questions about the arbitration agreement, he could have asked the facility, researched the question on his own, or hired an attorney to assist him.

¶17. Emile argues he was forced to sign the arbitration agreement in order to get his mother the care she needed. We find this claim meritless. The arbitration agreement specifically mentioned that the signor "has the right to seek legal counsel concerning this agreement." It also explained that the signor is not required to use OSHRC for her healthcare needs and that many other qualified facilities were available. Additionally, Emile was not in an emergency situation; he chose to transfer Carol to OSHRC from another facility. He could have chosen any other facility, but Emile freely and voluntarily chose to admit Carol to OSHRC.

¶18. We conclude that Emile entered into the arbitration agreement knowingly and voluntarily. Therefore, the arbitration agreement was not procedurally unconscionable.

### B. Substantive Unconscionablity

¶19. "Substantive unconscionability is proven by oppressive contract terms such that 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement

7

or left without a remedy for another party's nonperformance or breach.'" ***Caplin Enters., Inc. v. Arrington***, 145 So. 3d 608, 614 (Miss. 2014) (quoting ***Moulds***, 14 So. 3d at 699).

¶20.    Emile cites ***Moulds***, but it is distinguishable.   In ***Moulds*** this Court found an arbitration agreement substantively unconscionable because the agreement allowed only the facility, and not the customer, to litigate disputes in court, and it required that any dispute be brought in the same county the facility is located.  ***Moulds***, 14 So. 3d at 702.  The arbitration agreement here has no similar language; it merely designates the American Arbitration Association (AAA) as the agreed-upon forum and subjects both parties' claims to arbitration.

¶21.    In ***United Credit Corp. v. Hubbard***, 905 So. 2d 1176, 1179 (Miss. 2004), an arbitration agreement between a corporation and an individual was deemed "not substantively unconscionable because both parties were guaranteed the same rights by the agreement."  Like ***Hubbard***, the parties here can both demand and enforce the agreement to arbitrate and are therefore "guaranteed the same rights by the agreement."

¶22.    We find that the arbitration agreement is substantively conscionable.

### 4.    The Forum

¶23.    The arbitration agreement requires that any dispute "shall be settled exclusively by binding arbitration administered by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures . . . ."

¶24.    In 2003, the AAA changed its policy to no longer accept the administration of cases in the healthcare area involving individuals without a post-dispute agreement to arbitrate. Emile argues that this change makes the AAA, the forum selected by the arbitration

8

agreement, unavailable. We have held that when the forum selected in an arbitration agreement is unavailable, the agreement to arbitrate is unenforceable. *Moulds*, 14 So. 3d at 707-09.

¶25. However, the AAA's 2003 policy is no longer in effect. Its statement on the policy change reads, in relevant part

> In 2003, the American Arbitration Association® ("AAA") announced that it would not administer healthcare arbitrations between individual patients and healthcare service providers that relate to medical services, such as negligence and medical malpractice disputes, unless all parties agreed to submit the matter to arbitration after the dispute arose. This policy is consistent with the American Arbitration Association/American Bar Association/American Medical Association Due Process Protocol for the Mediation and Arbitration of Health Care Disputes.
>
> However, the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration.[1]

The current policy only requires that a court affirmatively direct that the matter be arbitrated, which the circuit court has already done. Emile again cites *Moulds*, 14 So. 3d at 707, and argues that requiring a court order to arbitrate requires the court to intervene in the contractual relationship of the parties. We disagree. The court simply enforced the already-agreed-upon contract; it did not redraft or reform the agreement as the court did in *Moulds*.

¶26. Emile also argues that the 2003 policy controls because it was in effect when the arbitration agreement was signed. But the arbitration agreement states that the dispute shall

---

[1] The AAA Healthcare Policy Statement is available at https://www.adr.org/sites/default/files/document_repository/AAA_Healthcare_Policy_Statement.pdf (last visited May 14, 2019).

be "administered by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures . . . ." Emile interprets "most recent" to mean the most recent version of the procedures. We do not agree with this interpretation. In **_Reed v. Johnson_**, No. 4:14-CV-176-SA-JMV, 2016 WL 913232, at *4 (N.D. Miss. Mar. 9, 2016), the United States District Court for the Northern District of Mississippi discussed the same issue and held,

> In accordance with this exception, the subject arbitration agreement calls for administration "by the American Arbitration Association under its most recent version of its Commercial Dispute Resolution Procedures . . . ." Thus, if this Court grants the motion to compel and orders the case to arbitration, the AAA will administer the arbitration notwithstanding the general prohibition discussed above.

We agree with **_Reed_** and interpret "most recent" to mean the procedures in effect at the time the dispute arose, not the procedures in effect when the arbitration agreement was signed.

## CONCLUSION

¶27. We find Emile's arguments meritless, and we affirm the decision of the Jackson County Circuit Court granting the motion to compel arbitration.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**