# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-2705

———————

Donaldson Company, Inc.,      *

               *

     Plaintiff – Appellee,    *

               *   Appeal from the United States

     v.                *   District Court for the

               *   Eastern District of Missouri.

Burroughs Diesel, Inc.,      *

               *

     Defendant – Appellant.    *

———————

Submitted: August 26, 2009
Filed: September 16, 2009

———————

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Donaldson Company, Inc., a nonsignatory, seeks to compel arbitration against Burroughs Diesel, Inc., a signatory to an agreement with an arbitration clause. The district court ordered arbitration. Burroughs appeals. Jurisdiction being proper under 28 U.S.C. § 1291, this court reverses and remands.[1]

---

[1] This Court previously issued an opinion on July 20, 2009, relying on *Finnie v. H&R Block Financial Advisors, Inc.*, 307 Fed. Appx. 19 (8th Cir. 2009) (unpublished) (per curiam), among other cases. The motion for rehearing is hereby granted, the previous opinion vacated, and this opinion substituted for it.

I.

In 1999, Burroughs signed a Dealer Full Service Agreement with Western Star Truck Sales, Inc. Western Star manufactured trucks that it sold to Burroughs for resale. A third party, Donaldson, supplied two parts of the air intake system in the trucks. The Dealer Agreement did not mention Donaldson. It contained an arbitration provision that

> any controversy or claim arising out of or in connection with this Agreement, its construction, interpretation, effect, performance, non-performance, termination, or consequences thereof, or any transaction contemplated hereby, however characterized as a matter of law (whether in contract, tort or otherwise), . . . shall be settled by arbitration in St. Louis County, Missouri . . . .

**Dealer Agreement ¶ 31**. The Agreement provided that it "shall be governed by and construed in accordance with the laws of the state in which Dealer's principal place of business, as designated in Paragraph 6 hereof, is located, and such laws shall be applied and control any arbitration conducted pursuant to Paragraph 31 hereof." *Id.* **¶ 34**.[2]

The engines failed in several trucks purchased from Burroughs. In November 2001, the buyers sued Donaldson, "Western Star Trucks," and Burroughs in Mississippi state court. In February 2002, Burroughs cross-claimed against Donaldson and Western Star. The cross-claim, referring to Donaldson and Western Star collectively as "Cross-Defendants," did not distinguish between them in terms of the misconduct alleged. Western Star answered the cross-claim, raising arbitration as an affirmative defense, and serving a copy on Donaldson.

---

[2]Paragraph 6 says that Laurel, Mississippi, is Burroughs's principal place of business.

Two days later, Western Star sued, in the U.S. District Court for the Eastern District of Missouri, to compel arbitration. Neither Burroughs nor Western Star notified Donaldson of the arbitration proceedings in Missouri.

In Mississippi, Donaldson answered the cross-claims, conditionally raising an arbitration defense: "If there is an arbitration agreement between Western Star Trucks and Burroughs, then the cross-claim is barred by that agreement and the cross claim should be dismissed and all issues should be resolved by arbitration." Donaldson raised other affirmative defenses, including "lack of privity" and the lack of a "legal, contractual, or other relationship" between Donaldson and Burroughs.

In December 2002, the Missouri federal court granted Western Star's motion to compel arbitration, relying on the arbitration clause in the Dealer Agreement. *See Western Star Truck Sales, Inc. v. Burroughs Diesel, Inc.*, No. 4:02-cv-457, slip op. at 9 (E.D. Mo. Dec. 2, 2002). Burroughs then dismissed its Mississippi cross-claim against Western Star.

In August 2007, Burroughs moved to schedule trial on its cross-claim against Donaldson in Mississippi. Soon thereafter, Donaldson alleges, it first learned of the Missouri arbitration order. In October 2007, Donaldson moved to compel Burroughs to arbitrate in the Missouri federal court, citing that court's 2002 arbitration order in the Western Star-Burroughs case.

In Missouri, Donaldson argued that, although it was not a party to the Dealer Agreement, arbitration was required because: (1) Burroughs's claim was premised on and presumed the existence of the Agreement; and (2) Burroughs previously alleged that Western Star and Donaldson acted in concert. Burroughs responded by moving for summary judgment, which was denied. The federal court granted

Donaldson's motion to compel arbitration, enjoining Burroughs from proceeding in Mississippi court.[3]

## II.

This court reviews "de novo a district court's grant of a motion to compel arbitration." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *Id.* The parties agree that paragraph 31 of the Agreement is a valid arbitration clause between Western Star and Burroughs. They dispute whether Donaldson can enforce the arbitration clause against Burroughs. Donaldson was not a party to the Agreement, and relies on the doctrine of equitable estoppel in the arbitration context. *See, e.g.*, *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001).

Donaldson contends that since equitable estoppel is the basis, the proper standard of review of the district court's grant of arbitration is abuse of discretion, citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000). The circuits are split. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993) (reviewing de novo the district court's order compelling arbitration, which invoked equitable estoppel, and labeling the equitable estoppel issue a "question of law"); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004) ("We exercise plenary review over the District Court's order compelling arbitration," where the district court invoked equitable estoppel). *But see Grigson*, 210 F.3d 524, 528 ("Accordingly, whether to utilize equitable estoppel in this fashion is within the district court's discretion; we review to determine only whether it has been abused."); *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395 (4th Cir.

---

[3]In February 2008, the plaintiff-buyers settled with Burroughs, Western Star, and Donaldson, dismissing their claims. The only claim pending in Mississippi is Burroughs's cross-claim against Donaldson.

2005) ("District court decisions determining the scope of arbitration agreements are generally reviewed de novo . . . . However, in cases such as the present one, the arbitration order does not rest on a term of the contract, rather upon the application of equitable estoppel. We review such equitable estoppel decisions for abuse of discretion.") (internal citations omitted).

Generally, courts review de novo a district court's grant of a motion to compel arbitration. *See, e.g., 3M Co.*, 542 F.3d at 1198. There is no reason to depart from the de novo standard here. Where a district court grants arbitration, its application of equitable estoppel presents at least mixed questions of law and fact. In this circuit, mixed questions of law and fact are reviewed de novo. *See, e.g., Sargent v. Commissioner*, 929 F.2d 1252, 1254 (8th Cir. 1991); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 369 (8th Cir. 1995).

## A.

Donaldson, in its petition for rehearing, argues that Mississippi law, not federal law, should apply based on the choice-of-law provision in the Agreement. "This court reviews a district court's choice of law determination de novo." *Am. Home Assurance Co. v. L & L Marine Serv., Inc.*, 153 F.3d 616, 618 (8th Cir. 1998).

The Federal Arbitration Act "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But "when deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. Conagra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007), *quoting First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal

substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement. ***Daisy Mfg. Co., Inc., v. NCR Corp.***, 29 F.3d 389, 392 (8th Cir. 1994); ***Fleetwood Enters. Inc. v. Gaskamp***, 280 F.3d 1069, 1073 (5th Cir. 2002).

The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions. ***Arthur Andersen LLP v. Carlisle***, 556 U.S. ____ (2009). "[A] litigant who was not a party to the relevant arbitration agreement may invoke §3 [of the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement." ***Id.*** "'State law' . . . is applicable to determine which contracts are binding under §2 and enforceable under §3 '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" ***Id.***, *quoting* ***Perry v. Thomas***, 482 U.S. 483, 493, n. 9 (1987). *See **Moses H. Cone***, 460 U.S. at 22 ("The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. §3, and an affirmative order to engage in arbitration, §4."). State law principles allowing "a contract to be enforced by or against nonparties to the contract," including "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," govern issues concerning the enforceability of contracts generally. ***Carlisle***, 556 U.S. at ____. Thus, these state law principles control whether a nonparty to an arbitration agreement can enforce the agreement under sections 3 and 4.

B.

The issue in this case is whether Donaldson, a nonsignatory, can enforce the arbitration provision in the Agreement. Under Mississippi state law, "equitable estoppel is an extraordinary remedy and should only be invoked to prevent unconscionable results." ***B.C. Rogers Poultry, Inc. v. Wedgeworth***, 911 So. 2d 483, 491 (Miss. 2005), *quoting **Harrison Enters., Inc. v. Trilogy Commc'ns, Inc.***, 818 So.

2d 1088, 1095 (Miss. 2002). Donaldson, relying on *B.C. Rogers Poultry*, argues that Mississippi law allows it to use equitable estoppel to compel arbitration against Burroughs.

In *B.C. Rogers Poultry*, a contract poultry grower for Rogers sued Rogers and the Bank of Morton. The grower alleged that Rogers and the Bank "forced and coerced him to assign collateral and/or borrow money on Rogers's behalf." 911 So. 2d at 486. Rogers moved to compel arbitration, relying on the arbitration clause in its agreement with the grower. The Bank joined Rogers' motion, although it was not a party to the agreement. The trial court denied the motion to compel arbitration. Rogers and the Bank appealed. Before the appellate court ruled, all claims against Rogers were discharged in bankruptcy. The Bank, a nonsignatory (alone) on appeal, sought to compel arbitration by invoking equitable estoppel. The Supreme Court of Mississippi discussed two theories of equitable estoppel from the Fifth Circuit's opinion in *Grigson*: the "relies on" test and the "concerted misconduct" test. ***B.C. Rogers Poultry***, 911 So. 2d at 491-92, *discussing* ***Grigson***, 210 F.3d 524. The court then discussed the traditional principles of estoppel under Mississippi law. 911 So. 2d at 492-93. The court held that the Bank could not compel arbitration with the grower. ***Id.*** at 493.

Despite the Mississippi Supreme Court's rejection of a nonsignatory's motion to compel arbitration in *B.C. Rogers Poultry*, Donaldson claims that Mississippi law permits it to enforce an agreement to arbitrate. Donaldson premises its argument on the position that Mississippi law recognizes each of the theories of equitable estoppel discussed in *B.C. Rogers Poultry*. Assuming that Mississippi law recognizes these theories, Donaldson still may not prevail by using equitable estoppel.

1.

First, Donaldson argues that it can invoke equitable estoppel against Burroughs because Burroughs's cross-claims rely on Burroughs's agreement with Western Star. Under *Grigson*, equitable estoppel allows a nonsignatory to compel arbitration "when

the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." 210 F.3d at 527, *quoting MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Grigson*, 210 F.3d at 527, *quoting MS Dealer*, 177 F.3d at 947.

The "relies on" test does not help Donaldson. Burroughs does not rely on its agreement with Western Star in asserting its claims against Donaldson. Burroughs cross-claimed against Donaldson and Western Star for: negligence, breach of fiduciary duty, breach of good faith and fair dealing, fraudulent misrepresentation, fraudulent concealment, and implied warranty of fitness for a particular purpose. Burroughs does not allege that the Agreement was breached. Burroughs's allegations do not refer to the Agreement or presume it exists. Burroughs's cross-claim would have a basis for recovery against Donaldson even if there were no Agreement. *Cf. MS Dealer*, 177 F.3d at 947-48 (compelling arbitration because "each of [the plaintiff's] fraud and conspiracy claims depends entirely upon her contractual obligation . . . for the service contract"); *Sunkist*, 10 F.3d at 758 ("Although [the signatory] does not rely exclusively on the license agreement to support its claims, each claim presumes the existence of such an agreement.").

2.

Second, Donaldson argues that it can invoke equitable estoppel against Burroughs because Burroughs alleges interdependent and concerted misconduct between Donaldson and Western Star. Donaldson contends that, under Mississippi law, the "concerted misconduct" test permits a nonsignatory to compel arbitration "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory

-8-

and one or more of the signatories to the contract." ***B.C. Rogers Poultry***, 911 So. 2d at 491, *quoting* ***Grigson***, 210 F.3d at 527. Additionally, either (1) the allegations of concerted misconduct must be dependent upon the agreement containing the arbitration provision, or (2) there must be "a close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship," between the nonsignatory and a signatory to the agreement. ***B.C. Rogers Poultry***, 911 So. 2d at 491-92.[4]

a.

Donaldson argues that Burroughs's cross-claim alleges "substantially interdependent and concerted misconduct" by Donaldson and Western Star. Below, the district court found that Burroughs "alleged in its cross-claim that Donaldson and Western Star acted as one." "[T]he focus of our inquiry should be on the nature of the underlying claims asserted by [the signatory] against [the nonsignatory] to determine whether those claims fall within the scope of the arbitration clause." ***Sunkist***, 10 F.3d at 757-58; *accord* ***MS Dealer***, 177 F.3d at 947.

The cases applying the concerted-misconduct test establish that the plaintiff must specifically allege coordinated behavior between a signatory and a nonsignatory. In *MS Dealer*, Franklin, a car buyer, signed a Buyers Order to purchase a car from Jim Burke Motors, Inc. 177 F.3d at 944-47. The Order incorporated by reference a Retail Installment Contract, which obligated the buyer to a service contract through MS Dealer Service Corporation. The Order contained an arbitration clause. When the buyer had problems with the car, she sued Burke and MS Dealer. According to her complaint, Burke and MS Dealer "improperly cooperated, conspired, and otherwise

---

[4]In *B.C. Rogers Poultry*, the Mississippi Supreme Court referred to this test as the "intertwined-claims test." 911 So. 2d at 491. In *Grigson*, the "intertwined-claims test" covers both the "relies on" test and "concerted misconduct" test taken together. *Grigson*, 210 F.3d at 527. This opinion uses "concerted misconduct" to refer to the concerted misconduct test by itself, and reserves the "intertwined-claims" label to refer to the two tests taken together.

colluded" to charge an excessive amount for the service contract. MS Dealer sought to compel arbitration, which the district court denied because MS Dealer was not a signatory to the Order. The Eleventh Circuit reversed, concluding "that Franklin's claims against Jim Burke and MS Dealer 'are based on the same facts and are inherently inseparable.'" *Id.* at 948. The court emphasized that the buyer "specifically alleges that MS Dealer worked hand-in-hand with Jim Burke and Chrysler Credit Corporation in this alleged fraudulent scheme." *Id.*

In *Denney v. BDO Seidman*, the plaintiffs claimed that they were recruited by two accounting firms to participate in a fraudulent tax scheme, Currency Options Bring Reward Alternatives (COBRA). 412 F.3d 58, 60-64 (2d Cir. 2005). The plaintiffs' "consulting agreements" with the firms contained broad arbitration clauses. The firms, along with Deutsche Bank, advised and executed an illegal plan where plaintiffs manufactured losses from partnerships engaged in foreign currency option transactions. The plaintiffs sued; defendants sought to compel arbitration. The district court held that the consulting agreements were "mutually fraudulent" and unenforceable, and denied a motion to compel arbitration. The Second Circuit reversed and remanded for consideration whether Deutsche Bank, a nonsignatory, could enforce the arbitration provision. The court noted, "[h]aving alleged . . . that the Deutsche Bank and BDO defendants acted in concert to defraud plaintiffs . . . plaintiffs cannot now escape the consequence of those allegations . . . ." *Id.* at 70. In particular, the court noted that the complaint alleged that the "Defendants *knowingly* acted in concert to market and implement the fraudulent and illegal COBRA tax shelter transaction." *Id.* (emphasis added).

In the present case, Burroughs's cross-claim stated that "Cross-Defendants concealed and misrepresented the fact that Western Star Heritage model truck was designed, manufactured and sold with an allegedly defective intake system." The pleading also said that "Cross-Defendants conduct was intentional and/or done with gross negligence." Although Burroughs's cross-claim made common allegations

against Donaldson and Western Star, it did not make any allegations suggesting that Donaldson and Western Star "knowingly acted in concert," "improperly cooperated," or "worked hand-in-hand." The concerted-misconduct test requires allegations of "pre-arranged, collusive behavior" demonstrating that the claims are "intimately founded in and intertwined with" the agreement at issue. *MS Dealer*, 177 F.3d at 948. Burroughs's cross-claims do not allege the level of "substantially interdependent and concerted misconduct" required by the case law.

b.

Under Mississippi law, even if Burroughs alleged "substantially interdependent and concerted misconduct" between Donaldson and Western Star, Donaldson could compel arbitration only if either (1) the allegations of concerted misconduct were dependent upon the agreement containing the arbitration provision, or (2) there were a close legal relationship, "such as alter ego, parent/subsidiary, or agency relationship" between Donaldson and Western Star.

In *B.C. Rogers Poultry*, the court found that neither scenario applied. The court found the grower's claims against the Bank were not "dependent upon" the agreement with Rogers, as the grower did "not rely upon the Broiler Growing Agreement in asserting his claims." 911 So. 2d at 491. The court also found that the business relationship between the Bank and B.C. Rogers Poultry was not sufficiently close for the Bank to compel arbitration. *Id.* at 492.

Burroughs's allegations are not "dependent upon" its agreement with Western Star. Like the grower in *B.C. Rogers Poultry*, Burroughs "does not rely upon [the Agreement] in asserting [its] claims." Burroughs's cross-claims do not refer to the Agreement or presume it exists, and Burroughs would have a basis for recovery against Donaldson even if there were no Agreement.

-11-

Donaldson does not have a sufficiently close legal relationship with Western Star. The close-relationship test analyzes whether, "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer*, 177 F.3d at 947. Under *B.C. Rogers Poultry*, a nonsignatory needs an "alter ego, parent/subsidiary, or agency relationship," or another comparable legal relationship, with a signatory to satisfy the close-relationship test. 911 So. 2d at 492.

Donaldson contends that the close-relationship test can be satisfied purely by the claims asserted, without considering the actual relationship between the defendants, and that Burroughs's cross-claims satisfy the test because of the identical allegations against Donaldson and Western Star. Donaldson conflates the close-relationship test with the analysis of whether a signatory raises allegations of "substantially interdependent and concerted misconduct."

Donaldson cites *Ingstad v. Grant Thornton, LLP*, for the proposition that a "'close relationship' . . . may be found in the structure of the [plaintiff's] complaint." No. 3:05-cv-98, 2006 WL 3751204, at *5 (D.N.D. Dec. 19, 2006). First, Donaldson acknowledges that no Mississippi court has followed *Ingstad*. Second, *Ingstad* misapplies the Second Circuit's opinion in *Denney*. The *Denney* court found that the plaintiffs' complaint satisfied the "allegations of concerted misconduct" requirement, not the close-relationship test. "Having alleged . . . that the Deutsche Bank and BDO defendants *acted in concert* to defraud plaintiffs, and that defendants' fraud arose in connection with BDO's tax-strategy advice, plaintiffs cannot now escape the consequences of those allegations by arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship. . . ." *Denney*, 412 F.3d at 70 (internal citations omitted) (emphasis added). The *Denney* court does not say the plaintiffs' complaint established a close relationship between Deutsche Bank and BDO. Rather,

it clarifies that the close-relationship test does not matter when there are allegations of "interdependent or concerted misconduct" and those claims are dependent upon, or intertwined with, the agreement containing the arbitration provision. The *Denney* court remanded for consideration of the relationship between the claims and the agreement, not the relationship between Deutsche Bank and BDO. *Id.* at 70 (instructing the district court to consider, "specifically, whether the issues the Deutsche Bank defendants seek to arbitrate are indeed intertwined with the consulting agreements").

The close-relationship test does not look to the claims asserted. Rather, it analyzes the relationship between the signatory and nonsignatory parties "under agency or related principles." *MS Dealer*, 177 F.3d at 947. Under these principles, the business relationship between B.C. Rogers Poultry and the Bank was not sufficiently close. *B.C. Rogers Poultry*, 911 So. 2d at 492. Likewise, the business relationship between Donaldson and Western Star is not sufficiently close. Donaldson has no relationship with Western Star or Burroughs other than supplying parts for the trucks at issue. Donaldson contends its supply-chain relationship with Western Star is sufficient. If it were, any supplier could enforce an arbitration provision if the manufacturer had agreed to arbitration. The supply-chain relationship between Donaldson and Western Star is not nearly as close as the "alter ego, parent/subsidiary, or agency relationship" contemplated in *B.C. Rogers Poultry*.[5]

---

[5]Donaldson fails to demonstrate a sufficiently close relationship with Western Star whether the close-relationship test is part of the equitable estoppel analysis, as in *B.C. Rogers Poultry*, or is its own distinct ground for allowing a non-signatory to compel arbitration. *See MS Dealer*, 177 F.3d at 947 (listing equitable estoppel and a sufficiently close legal relationship as separate circumstances where nonsignatories can compel arbitration); *Denney*, 412 F.3d at 71 (same); *Qualcomm Inc. v. Am. Wireless License Group, LLC*, 980 So. 2d 261, 269 (Miss. 2007) (same).

3.

"Absent allegations of substantially interdependent and concerted misconduct between a non-signatory and a signatory who have a close legal relationship, the Mississippi law of equitable estoppel should first be examined to determine if conditions are present where equity should allow a non-signatory to compel arbitration." *Id.* Under Mississippi law, equitable estoppel requires: (1) belief in and reliance upon some representation, (2) a change in position on account of that belief and reliance, and (3) detriment resulting from the reliance. *Id.*

Donaldson does not assert that it believed or relied on any representation about arbitration, or changed its position to its detriment in reliance on a representation. It does not appear that Donaldson even knew about the arbitration agreement between Burroughs and Western Star until this litigation began. Donaldson may not invoke equitable estoppel in this case.

III.

The order compelling arbitration is reversed, and the case remanded for further proceedings consistent with this opinion.

_____