# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3406

_____

Eddie B. Robinson, as administrator for the Estate of Willie Robinson, Sr., deceased

*Plaintiff - Appellant*

v.

EOR-ARK, LLC; VAJ, LLC; Senior Living Communities of Arkansas, LLC; SLC Operations Holdings, LLC; SLC Operations, LLC; Pine Hills Holdings, LLC; Pine Hills Health and Rehabilitation, LLC, doing business as Pine Hills Health and Rehabilitation; SLC Operations Master Tenant, LLC; SLC Properties, LLC; SLC Property Holdings, LLC; SLC Property Investors, LLC; Arkansas Nursing Home Acquisitions, LLC; CSCV Holdings, LLC; Capital Funding, LLC; Capital Funding Group, Inc.; Capital Finance, LLC; Capital Seniorcare Ventures, LLC; Addit, LLC; SLC Professionals of Arkansas, LLC, doing business as SLC Professionals, LLC; Senior Vantage Point, LLC; 900 Magnolia Road SW, LLC; Quality Review, LLC; Arkansas SNF Operations Acquisition, LLC; SLC Professionals Holdings, LLC; SLC Administrative Services of Arkansas, LLC; John Dwyer

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: September 21, 2016
Filed: November 14, 2016

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Willie Robinson, Sr. entered into an arbitration agreement when he was admitted to the Pine Hills Health and Rehabilitation nursing home. After Willie died, his son and estate administrator Eddie Robinson (Robinson) brought this action against Pine Hills and related entities. Defendants moved to dismiss and compel arbitration. The district court[1] granted defendants' motion and Robinson now appeals. We affirm.

I.

When Willie was admitted to Pine Hills in 2010 he signed an arbitration agreement. The arbitration agreement provides that it is governed by the Federal Arbitration Act and includes a severability clause. The agreement also provides that claims arising from Pine Hills services to Willie must be arbitrated "in accordance with the National Arbitration Forum Code of Procedure, ('NAF') which is hereby incorporated into th[e] agreement, and not by a lawsuit or resort to court process." (footnote omitted). The code lists five possible fora for arbitration: NAF, the International Arbitration Forum, the Arbitration Forum, arbitration-forum.com, and adrforum.com.

The year before the parties had entered into the arbitration agreement, NAF entered into a consent judgment in which it agreed not to process, administer, or in any way participate in any new consumer arbitration. The parties do not state whether the four other arbitration fora listed in the code still perform consumer arbitration. The code provides that if the code is canceled or the parties "are denied

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Barry A. Bryant, Chief Magistrate Judge, United States District Court for the Western District of Arkansas.

the opportunity to arbitrate a dispute, controversy or Claim before" a forum listed in the code, then the parties "may seek legal and other remedies."

After Willie died, Robinson filed a complaint in Arkansas state court for alleged injuries and wrongful death Willie suffered at Pine Hills. Defendants are Pine Hills; entities that owned, operated, managed, controlled, and provided services to Pine Hills; and a person who was the corporate manager, officer, owner, and director of the defendant entities. Defendants moved to dismiss the complaint and compel arbitration and then removed the case to federal court. The district court granted the motion to dismiss and compel arbitration. Robinson appeals the district court's order.

II.

We review the district court's decision to compel arbitration de novo and its factual findings for clear error. Schultz v. Verizon Wireless Servs., LLC, 833 F.3d 975, 980 (8th Cir. 2016). In reviewing an arbitration agreement, "we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004). If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted. 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1198 (8th Cir. 2008).

State contract law governs whether the parties have entered into a valid arbitration agreement. Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009). Robinson does not argue that the agreement is unenforceable, and under Arkansas law the agreement is enforceable even though NAF is unavailable to serve as the arbitrator. Courtyard Gardens Health & Rehab., LLC v. Arnold, 485 S.W.3d 669, 674–77 (Ark. 2016).

-3-

Because the arbitration agreement is enforceable, we must determine whether the present dispute falls within its scope given that NAF no longer conducts consumer arbitration. In determining whether a dispute falls within the scope of an arbitration clause, we "construe[] the clause liberally, resolving any doubts in favor of arbitration . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" 3M Co., 542 F.3d at 1199 (quoting MedCam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005)).

Robinson argues that the terms of the arbitration agreement allow him to litigate his claims because NAF's unavailability denies him "the opportunity to arbitrate a dispute, controversy or Claim before" the fora listed in the code. As an initial matter, it is not clear whether all possible arbitration fora listed in the code are actually unavailable. NAF has stopped participating in consumer arbitration but paragraph 2(S) of the code lists four other possible arbitration fora. If any of these fora is available, then there is no lapse in naming an arbitrator and the parties are bound to arbitrate. The parties appear to accept, though, that all fora listed in paragraph 2(S) are unavailable.

Even assuming that all listed arbitration fora are unavailable, the arbitration agreement still requires the parties to arbitrate this dispute. The code provides that if a party is denied the opportunity to arbitrate before a listed forum, then it "may seek legal and other remedies in accord with applicable law." The applicable law here is Section 5 of the Federal Arbitration Act. That statute provides that when there is a lapse in naming an arbitrator, the court must appoint a substitute arbitrator so that the parties may still arbitrate the dispute. 9 U.S.C. § 5.

Many courts have recognized an exception to Section 5 when the choice of arbitrator is integral to the arbitration agreement. Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1350 & n.1 (11th Cir. 2014) (collecting cases). But see Green v. U.S. Cash Advance Ill., LLC, 724 F.3d 787 (7th Cir. 2013). Robinson argues that we

should recognize this exception and conclude that the selection of NAF was integral to the arbitration agreement. We need not decide whether to adopt such exception because it would not apply in this case as the choice of arbitrator was not integral to the arbitration agreement. The arbitration agreement does not say that the parties must either arbitrate before one of the five fora listed in the code or else litigate. Instead, the agreement allows the parties to "seek legal and other remedies" which leaves open the possibility of arbitration before a different arbitrator. Moreover, the parties may well have considered the choice of arbitrator unimportant enough that they did not check whether NAF was still available to perform consumer arbitration before they entered into the agreement. If they had checked, they would have learned that NAF had stopped performing such arbitrations nearly a year earlier.

Robinson also argues that he is not required to arbitrate his claims because the code has been canceled, and the code itself allows parties to seek "legal and other remedies" in this situation. He has not shown, however, that NAF has canceled the code. The meaning of the term "cancel" in this context is a matter of contract interpretation, and the code does not define the term. Because the Federal Arbitration Act does not address this issue, state law controls. See DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463, 468 (2015). Interpreting the same contract language, the Arkansas Supreme Court recently ruled that NAF's cessation of consumer arbitration does not by itself establish that NAF has canceled the code. See Courtyard Gardens, 485 S.W.3d at 676. The fact that NAF has stopped performing consumer arbitration does not prove that the code has been canceled, and Robinson has not provided additional persuasive evidence to show cancellation.

Robinson finally argues that defendants who did not sign the arbitration agreement may not force his claims to arbitration. State contract law governs the power of nonsignatories to enforce an arbitration agreement. Donaldson, 581 F.3d at 732. Under Arkansas law, "a nonsignatory may compel a signatory to arbitrate claims in limited circumstances." PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592

F.3d 830, 834 & n.3 (8th Cir. 2010). One such circumstance "relies on agency and related principles to allow a nonsignatory to compel arbitration when, as a result of the nonsignatory's close relationship with a signatory, a failure to do so would eviscerate the arbitration agreement." Id. at 834.

According to Robinson's complaint, his claims arise from most defendants' participation "in the ownership, operation, management, control and/or services provided to Pine Hills." The complaint also alleges that all defendants "through a joint venture owned, operated, managed and controlled Pine Hills." The arbitration agreement says "that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility."

Under Arkansas law, these allegations are enough for a court to conclude that the parties are closely related and that arbitration is appropriate. See Searcy Healthcare Ctr., LLC v. Murphy, 2013 Ark. 463 at *6 (2013) (unpublished). To the extent that nonsignatory defendants provided services to Pine Hills, they may compel arbitration because the parties specifically agreed that the arbitration agreement ran to their benefit. To the extent that the nonsignatory defendants owned, operated, and managed Pine Hills, they may compel arbitration because they are closely related to Pine Hills and Robinson's claims arise from their relationship with Pine Hills. If Robinson were allowed to sue its owners, operators, and managers for Pine Hills' alleged misconduct, then he would be able to evade the arbitration agreement and thus eviscerate it. In order to honor the arbitration agreement, we should enforce it against the nonsignatory defendants.

For these reasons we affirm the order of the district court.

_____