RAYMOND R. ABRAMSON, Judge
Dr. Gerald Stipanuk appeals from the Mississippi County Circuit Court's order denying his motion to stay proceedings and to compel arbitration. On appeal, Dr. Stipanuk argues that the circuit court erred in denying his motion. We affirm.
Dr. Stipanuk, a medical doctor, is the medical director of Heritage Square Nursing and Rehabilitation Center, Inc. (Heritage Square). The medical-director agreement between Dr. Stipanuk and Heritage Square provides in part:
2. Provider Services..... Provider agrees to be responsible for the peer review activities at the facility, including the overall coordination of medical care for all patients, not only those for whom Provider is the Attending Physician. For purposes hereof, coordination of care *36 means Provider shares responsibility for assuring that the facility is providing an appropriate level and quality of care for its patients as required which involves monitoring and ensuring implementation of patient care policies and providing oversight and supervision of physician services and medical care of patients.
....
10. Independent Contractor. This agreement does not constitute a hiring of Provider as an employee of the facility. It is the parties' intention that Provider shall be an independent contractor and not the facility's employee.... This agreement shall not be construed as a partnership, and facility shall not be liable for any obligations incurred by Provider.
Johnnie Mae Williams was a resident of Heritage Square, and her daughter is Songela Williams. Johnnie Mae was admitted to Heritage Square on June 5, 2015. When Johnnie Mae was admitted, Songela executed an admission agreement and an arbitration agreement with Heritage Square on behalf of Johnnie Mae. The admission agreement provided in part:
I. FACILITY OBLIGATIONS
....
D. Obtaining physician services. The Facility agrees to exercise due diligence to obtain services of the Patient's personal physician when the Patient's condition requires such medical attention. If the Patient's personal physician is not available, the Facility will exercise due diligence in attempting to obtain the services of another equally qualified physician for the Patient.
....
IV. FACILITY POLICIES AND PROCEDURES
....
B. Physician Instruction. The Patient is under the care of his or her personal physician. The Patient acknowledges that the physician is an independent contractor, and that the Facility's liability is limited for any act or omission by the physician, as long as the staff of the Facility exercises the appropriate care.
The arbitration agreement provided in part:
2. The Parties understand and agree that all claims, disputes, demands, and controversies arising out of, in connection with or relating in any way to the validity, interpretation, or performance of the Resident Admission Agreement, or any service or health care provided by the Facility to the Resident, including any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact or inducement ("Claims"), shall be resolved by the fullest extent permitted by federal law exclusively by binding arbitration and not by a lawsuit or resort to court process. This includes all Claims of the Resident and all Claims of the Facility.
....
5. All Claims based in whole or in part of the same incident, transaction or the same course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding.
....
14. This Agreement shall inure to the benefit of, and bind, the Parties and their successors, heirs, executors, administrators, or assigns. With regard to the Facility, this includes any agents, employees, and/or servants of the Facility.
On June 10, 2015, five days after Johnnie Mae's admission to Heritage Square, she died.
*37 On September 19, 2016, Songela, individually and as the special administrator of Johnnie Mae's estate (the Estate), filed suit against Heritage Square and its affiliated entities.[1] The complaint also included Dr. Stipanuk as a defendant in his capacity as Johnnie Mae's primary-care physician. The complaint asserted that "[t]his is an action for monetary damages owed to the decedent, Johnnie Mae Williams, her estate and its beneficiaries due to the medical malpractice, ordinary negligence, violation of resident rights, and wrongful death caused by Defendants." Specifically, the Estate alleged claims for (1) medical malpractice against Heritage Square; (2) violations of the "Arkansas Resident Rights" statute against Heritage Square; (3) ordinary negligence against Heritage Square and its affiliates; (4) joint venture and/or joint enterprise against Heritage Square and its affiliates; (5) medical malpractice against Dr. Stipanuk; and (6) wrongful death against all defendants. In the complaint, the Estate asserted that "Dr. Stipanuk was assigned to be and was her primary care physician at Heritage Square."
On March 20, 2017, Heritage Square and its affiliates filed a motion to stay proceedings and compel arbitration. They attached the admission and arbitration agreements to the motion. The court held a hearing on August 28, 2017. At the hearing, the Estate's counsel clarified the facts that gave rise to the complaint. Specifically, she stated that while at Heritage Square, Johnnie Mae had a feeding tube. Heritage Square employees allegedly called Dr. Stipanuk, and he told them to continue feeding Johnnie Mae for the five days she resided at Heritage Square. Johnnie Mae was later taken to the emergency room where she died due to overfeeding.
Following the hearing, on August 29, 2017, Dr. Stipanuk joined the motion to stay proceedings and compel arbitration. He attached the medical-director agreement to his motion.
On December 6, 2017, the court entered a written order granting the motion to stay proceedings and compel arbitration as to Heritage Square and its affiliates. However, the court denied the motion as to Dr. Stipanuk because he was not a signatory to the arbitration agreement, and the complaint related to Dr. Stipanuk's acts committed in his capacity as Johnnie Mae's treating physician, not in his capacity as Heritage Square's medical director. Thus, the court found that "[t]he rationale for giving the benefit of a contractual agreement to non-signing entities involved in the operation and control of an enterprise" did not apply. Dr. Stipanuk timely appealed the circuit court's order to this court.
An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.-Civ. 2(a)(12) ; Ark. Code Ann. § 16-108-228(1) (Repl. 2016); HPD, LLC v. TETRA Techs., Inc. , 2012 Ark. 408, 424 S.W.3d 304. We review a circuit court's order denying a motion to compel arbitration de novo on the record. GGNSC Holdings, LLC v. Lamb ex rel. , 2016 Ark. 101, 487 S.W.3d 348.
On appeal, Dr. Stipanuk argues that the circuit court erred in denying his motion to stay the proceedings and compel arbitration. He recognizes that he is not a signatory to the arbitration agreement; however, he points out that in Searcy Healthcare Center, LLC v. Murphy , 2013 Ark. 463, 2013 WL 6047164, our supreme court held that an arbitration agreement was binding on a signatory's agents when *38 the agreement plainly provided that it was "binding upon the employees, managers, officers, directors, parent company, subsidiaries, and successors in interest." Dr. Stipanuk asserts that he is an agent of Heritage Square and points out that paragraph 14 of the arbitration agreement provides that the agreement applies to Heritage Square's "agents, employees, and/or servants." He claims he is an agent of Heritage Square because he was assigned to be Johnnie Mae's primary-care physician, and the medical-director agreement required him to provide medical-care services to all of Heritage Square patients.
The terms of an arbitration contract generally do not apply to those who are not parties to the contract. Am. Ins. Co. v. Cazort , 316 Ark. 314, 871 S.W.2d 575 (1994). However, nonsignatories to a contract may be deemed as parties, through ordinary contract and agency principles, for the purposes of the Federal Arbitration Act. Id. The fact that they are not literally covered by the arbitration clause is not dispositive. Id. We enforce arbitration agreements according to their terms. HPD, LLC , 2012 Ark. 408, 424 S.W.3d 304.
We find Searcy Healthcare inapplicable to the instant case because Dr. Stipanuk was an independent contractor of Heritage Square, and he has not established that he was its agent. The contract between Dr. Stipanuk and Heritage Square specifically provides that Dr. Stipanuk is an independent contractor. The admission agreement also provides that Johnnie Mae's personal physician is an independent contractor and that she is "under the care of ... her personal physician." And the Estate sued Dr. Stipanuk in his capacity as Johnnie Mae's primary-care physician, not in his capacity as medical director of Heritage Square.[2] Given this evidence, we cannot conclude that Dr. Stipanuk was an agent of Heritage Square and that paragraph 14 of the arbitration agreement consequently extends to him.
Dr. Stipanuk alternatively argues that the arbitration agreement requires that the Estate's claims against him be arbitrated with its claims against Heritage Square and its affiliates. He relies on paragraph 2 of the arbitration agreement, which states that the parties agree to arbitrate "all claims, disputes, demands, and controversies arising out of, in connection with or relating in any way to the validity, interpretation, or performance of the Resident Admission Agreement, or any service or health care provided by the Facility to the Resident" and paragraph 5, which states that "[a]ll Claims based in whole or in part of the same incident, transaction or the same course of care or services provided by the Facility to the Resident shall be arbitrated in one proceeding." He further asserts that his close relationship with Heritage Square suggests that all the claims be arbitrated together.
In making his argument, Dr. Stipanuk relies on Robinson v. EOR-ARK, LLC , 841 F.3d 781 (8th Cir. 2016). In Robinson , the Eighth Circuit, applying Arkansas law, held that an arbitration agreement applied to nonsignatory defendants because the nonsignatory defendants were closely related to the signatories, and if the plaintiff was allowed to sue the nonsignatory defendants in court, he "would be able to evade the arbitration agreement and thus eviscerate it." Id. at 784. The lawsuit also involved a wrongful-death suit against a nursing home. Id. The nonsignatory defendants included the entities that owned, operated, *39 managed, controlled, and provided services to the nursing home and a corporate manager, officer, owner, and director of the entities. Id. The arbitration agreement provided "that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility." Id. at 785. The Eighth Circuit reasoned that the nonsignatory defendants could compel arbitration due to the close relationship of the signatory and nonsignatories and because the parties specifically agreed that the arbitration agreement ran to their benefits. Id.
In this case, the agreements provided that Johnnie Mae was under the care of her personal physician, that the physician was an independent contractor of Heritage Square, and that Heritage Square's liability was limited for any act or omission of the physician. Thus, Dr. Stipanuk did not appear to have a close relationship with Heritage Square. Further, as discussed, the Estate sued Dr. Stipanuk in his capacity as Johnnie Mae's primary-care physician, not in his capacity as medical director to oversee the coordination of medical care at the nursing home. Thus, the claims did not relate to the validity, interpretation, or performance of the resident admission agreement, or health care or services provided by Heritage Square. Accordingly, allowing the Estate to sue Dr. Stipanuk in court would not eviscerate the arbitration agreement.
Dr. Stipanuk lastly argues that the Estate is estopped from avoiding arbitration as to him. He argues that the circuit court improperly allowed the Estate to ignore the admission and arbitration agreements while simultaneously allowing it to use the contracts to pursue its case. He relies on American Insurance Company v. Cazort , 316 Ark. 314, 871 S.W.2d 575 (1994). In Cazort , the appellant relied on a contract to prove his breach-of-contract claim, but he sought to avoid the contract's arbitration provision. Id. Our supreme court concluded that it would have been inequitable to allow the appellant to maintain such inconsistent positions to avoid arbitration and noted that a plaintiff "cannot have it both ways. It cannot rely on the contract when it works to its advantage and ignore it when it works to its disadvantage." Id. at 322, 871 S.W.2d at 579-80.
We find Cazort distinguishable from the instant case. The Estate alleges a medical-malpractice claim and a wrongful-death claim against Dr. Stipanuk in his capacity as Johnnie Mae's primary-care physician. It does not rely on the admission and arbitration agreements to establish its claims. The claims would exist regardless of whether the admission agreement and arbitration agreement existed. Thus, the Estate is not relying on the contracts when they work to its advantage and ignoring them when they work to its disadvantage. Accordingly, the Estate is not estopped from avoiding arbitration of its claims against Dr. Stipanuk.
Therefore, for the reasons set forth above, we hold that the circuit court did not err in denying Dr. Stipanuk's motion to stay the proceedings and to compel arbitration.
Affirmed.
Virden and Hixson, JJ., agree.

The affiliated entities included Reliance Health Care, Inc.; Extendi-Care, Inc.; and RHC Operations, Inc.

Dr. Stipanuk does not cite any authority stating that an independent contractor can be an agent in these circumstances.